(615 P.2d 795)

No. 51,299

STATE OF KANSAS, *Appellee,* v. CULLEN C. BECKNELL, JR., *Appellant.*

Opinion filed August 15, 1980.

*Daniel E. Monnat,* of Shultz, Fisher, Monnat & Shultz, of Wichita, for appellant.

*Ronald D. DeMoss* and *Beverly Dempsey,* assistant district attorneys; *Vern Miller,* district attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

MEYER, J.: Cullen C. Becknell, Jr. (appellant) was convicted on two counts of possession of LSD (K.S.A. 1979 Supp. 65-

4127b[a][3]), two counts of sale of LSD (K.S.A. 1979 Supp. 65-4127b[b][3]), one count of possession with intent to sell LSD (K.S.A. 1979 Supp. 65-4127b[b][3]), and one count of conspiracy to sell LSD (K.S.A. 21-3302).

The two alleged possession counts involved possession of LSD at Kellogg and Broadway Avenues in Wichita on July 20 and again on July 21, 1978. The sale counts were based on allegations that appellant sold LSD at this same location on the same dates.

The possession of LSD with intent to sell count involved a situation occurring at 13th and Topeka Streets in Wichita on July 27.

The conspiracy count alleged that between July 11 and July 27, one Wallace Anderson, appellant, and others unknown conspired and agreed to sell LSD, and that the overt acts committed were the July 20th sale at Broadway and Kellogg and the July 27th sale at 13th and Topeka.

Appellant's convictions arise out of a chain of events occurring from June 1978 to July 27, 1978, when he was arrested. In June of 1978, Wallace Anderson installed a transmission in appellant's auto free of charge. As a result, appellant stated he felt obligated to Anderson to repay the gratuity. On July 19, 1978, appellant went to Anderson's apartment. Unbeknownst to appellant, undercover Wichita narcotics officers had contacted Anderson at his apartment to set up an LSD buy. When appellant arrived, it had been agreed that Anderson would sell 3,000 pills to the officers for $1.50 per pill. Appellant was introduced to the officers and a general conversation about the "deal" continued with appellant allegedly offering suggestions as to a meeting place and other details. After the officers had left, Anderson told appellant that the two officers were his good friends and asked appellant to help him obtain the pills. The next day, July 20, appellant took $650.00 from Anderson and obtained 1,000 pills from a supplier, Dennis Carriker. Appellant gave the pills to Anderson, who in turn sold the pills to the officers for $1,500.00 at 11:13 p.m. After that, Anderson gave $1,500.00 to appellant who again returned to Carriker's house and purchased another lot of 1,000. These pills and the overage money from the sales were again given to Anderson, who sold the LSD to the officers at about 1:25 a.m. on July 21. Appellant kept no pills nor any of the money, but was paid approximately $20.00 for gas used in locating Carriker.

On July 26, 1978, Anderson told appellant that he was going to sell more LSD to the officers and asked appellant to get some more LSD. There were two taped telephone conversations on July 26 between appellant and one of the detectives. These conversations involved obtaining more LSD and the quantity thereof. Furthermore, the discussion contained several expressions by both parties that they should obtain the entire amount desired in one purchase in order to reduce the risk involved. Appellant made about ten trips to Carriker's house but was unsuccessful in obtaining any more LSD. On July 27, 1978, Anderson called one of the officers and told him he had gotten 3,000 hits from another source and that said source had 8,000 more. They agreed to meet at a church parking lot at 13th and Topeka. The officer requested Anderson to bring appellant along. Anderson requested appellant to accompany him to "make sure that nothing . . . funny goes on," but without telling him he had pills in his possession. Anderson and appellant went in separate cars, with appellant making a stop before arriving at the parking lot. Upon arrival, Anderson handed the officer the 3,000 pills wrapped in a towel. Appellant then pulled into the parking lot. The officer told Anderson the money was in the trunk of his car. Anderson got out of his car and the officer motioned appellant to come over to where they were. Appellant and Anderson joined the officers at the trunk; one officer opened the trunk, pulled out a shotgun, and arrested Anderson and appellant. A "Primatene tablet" bottle containing LSD was also taken from appellant at that time.

Appellant claims there was not sufficient evidence to support his conviction for conspiracy.

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?" *State v. Peoples,* 227 Kan. 127, Syl. ¶ 2, 605 P.2d 135 (1980).

"In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence, and if the essential elements of the charge are sustained by any competent evidence the conviction stands." *State v. Racey,* 225 Kan. 404, Syl. ¶ 3, 590 P.2d 1064 (1979).

"Conspiracy as defined in K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in

furtherance of the object of the conspiracy. To prove a conspiracy to commit a crime it is not necessary that the ultimate crime intended be committed if both the agreement and an overt act in furtherance of the object of the conspiracy is proven." *State v. Glazer,* 223 Kan. 351, Syl. ¶ 1, 574 P.2d 942 (1978).

Appellant argues that because he arrived at the motel room after the initial agreement to sell the LSD was made, he did not agree to the conspiracy.

The evidence indicated that the appellant, after arriving, took part in the discussion of the details of the sale, and even suggested a meeting place where the sale could take place. Further, after the agents had left, he agreed to obtain pills for Anderson, and did so.

"It is not necessary . . . that a defendant enter into the unlawful agreement at its inception. [Citations omitted.] . . . [I]f a person later joins an already formed conspiracy knowing of the unlawful purpose, he may be held responsible for the acts done in furtherance of the conspiracy . . . ." *Nelson v. United States,* 415 F.2d 483, 486 (5th Cir. 1969).

See also 16 Am. Jur. 2d, Conspiracy § 10, p. 225.

Appellant's claim that he did no more than to suggest a place where whites and blacks could meet without risking unpleasantries is in conflict with evidence that the appellant not only suggested the meeting place but discussed other details of the sale. He further agreed later to obtain the pills for sale. The trial court is not required to believe appellant's version of the facts.

Appellant also claims that he made no money out of any of these transactions. This, even if true, is irrelevant.

"In a prosecution for conspiracy under K.S.A. 21-3302, it is not necessary that a conspirator be shown to have a financial stake in the conspiracy. It is only necessary that he be shown not to be indifferent to the outcome of the conspiracy." *State v. Daugherty,* 221 Kan. 612, Syl. ¶ 5, 562 P.2d 42 (1977).

Moreover, there was ample evidence to show appellant was not indifferent to the outcome of the conspiracy. He made numerous trips to his supplier on July 26 attempting to make the buy in order to supply the detectives with the LSD.

Appellant further argues that the overt acts were not encompassed by the specific original agreement. Appellant clearly agreed to obtain the pills for Anderson and knew specifically that Anderson was going to sell the pills to the two detectives as was evidenced by his talking with the detectives at Anderson's apartment on July 19 and further indicated in a taped telephone

conversation on July 26 with one of the detectives. The trial court was clearly justified in concluding that the appellant knew of the unlawful purpose of the conspiracy, agreed to join it, and committed overt acts towards accomplishment of the goal.

Appellant also argues that he was merely a procuring agent for Anderson, that the procuring agent defense was thus established as a matter of law, and therefore he could not be convicted for sale of LSD or for conspiracy.

Kansas first recognized the procuring agent defense in the sale of narcotics in *State v. Osbum,* 211 Kan. 248, 505 P.2d 742 (1973). Under the theory if the defendant is an agent for a purchaser, and not for the seller, he is not guilty of an unlawful sale in procuring the unlawful substance. *State v. Haynes,* 5 Kan. App. 2d 144, 612 P.2d 1268 (1980), makes it clear that the purpose of the procuring agent defense is to extend to agents who act for purchasers the legislative exemption from prosecution given to purchasers.

"Whether the appellants were selling agents . . . or merely procuring agents for the buyer was a question of fact to be determined from the evidence by the trier of fact." *State v. Luginbill,* 223 Kan. 15, 22, 574 P.2d 140 (1977).

As in *Luginbill,* in the case at bar the trial was to the judge and he resolved the question in favor of the prosecution. We cannot say that his decision was unsupported by the evidence in view of the fact that the trial court is not required to believe appellant's version of the facts. There is evidence that appellant was the party that knew Dennis Carriker, the source of the drugs. Further, Anderson wore two hats—one as the seller to the detectives, and one as the purchaser from Carriker. Appellant was in on the sale to the detectives and could be construed to be acting on behalf of the seller in this case. The fact that the consideration for his services was forgiveness of a debt incurred from Anderson's fixing his car would not support an assertion that he was merely a procuring agent. We cannot rule as a matter of law that the facts taken in the light most favorable to the State show that appellant was only a procuring agent for the purchaser.

Appellant also claims that his entrapment defense was established as a matter of law.

Appellant claims that Anderson was an agent of the State and that he talked appellant into doing something he normally would not have done. There was no evidence indicating that Anderson was working for the State and, in fact, Anderson was prosecuted with appellant.

The Judicial Council's comment to the entrapment statute, K.S.A. 21-3210, states:

"The defense of entrapment codified in this section is based upon the theory that improper law enforcement methods should be penalized, and that depriving the person using such methods of the fruits of his labor is a proper way of penalizing him. *The defense is available only when the person doing the entrapping is a public officer or his agent.*" (Emphasis added.)

The trial court did not err in ruling that the entrapment defense was not established from the facts.

Appellant also claims that the two counts for sale of LSD were multiplicitous.

Appellant argues that the two sale incidents were sufficiently tied in time and circumstances to be analogous to facts in *State v. Dorsey,* 224 Kan. 152, 578 P.2d 261 (1978).

In *State v. Dorsey,* the defendant was convicted of three counts of attempted rape, once at 12:35 a.m., once at 12:45 a.m., and once at 1:20 a.m. He was also convicted of two counts of sodomy, once at 12:50 a.m. and once at 1:35 a.m. The court noted:

"All of the alleged crimes took place with one victim, under a single set of circumstances within a time span of approximately one hour." 224 Kan. at 153.

The court held the three counts of attempted rape to be multiplicitous and vacated conviction on two of the counts. The court also vacated the conviction on one of the sodomy counts on the ground that it was multiplicitous.

" 'Multiplicity' in a criminal pleading is the charging of a single offense in several counts." 224 Kan. 152, Syl. ¶ 6. The case at bar is distinguishable from *Dorsey.* Here, on the evening of July 20, the appellant bought 1,000 hits of LSD and gave them to Anderson who sold them to detectives at 11:15 p.m. He was then given $1,500.00 more from Anderson. At 1:00 a.m., July 21, he returned to Carriker's house and purchased a second lot of 1,000 which he gave to Anderson and which Anderson sold to detectives at 1:25 a.m. The transactions were carried out during two separate trips. Under the evidence we cannot hold as a matter of law that there was but a single sale. The two counts for sale were not multiplicitous.

Appellant claims that two of the possession convictions were merged with the two sale convictions.

"Convictions of possession of a controlled substance, in violation of K.S.A.

1978 Supp. 65-4127a, and sale of a controlled substance, when the sale is of the possessed controlled substance, constitute proscribed multiplicitous convictions." *State v. Hagan,* 3 Kan. App. 2d 558, Syl. ¶ 2, 598 P.2d 550 (1979).

The test is whether "the possession of the contraband was solely for the purpose of and solely incidental to its sale and the sale is consummated." 3 Kan. App. 2d at 561.

The two counts of possession in this case were possession of the same drugs involved in the sale transactions for which appellant was prosecuted. The possession convictions merged with the sale convictions and should be reversed under the authority of *State v. Hagan.*

It is noted that the possession with intent to sell conviction would not be merged as he was so charged with possession on July 27 and there was no sale consummated on that date, since he was arrested before the sale took place. The July 27th incident related to the conspiracy count and appellant was not convicted for sale on that date.

The possession with intent to sell count is reversible on other grounds, however.

Appellant also claims there was insufficient evidence to support his conviction of possession of LSD with intent to sell. There was no evidence that appellant himself had the drugs in his possession on July 27. Appellant's codefendant obtained the pills and transferred them himself. Thus, appellant could be convicted on this count for the 3,000 pills delivered only on a vicarious liability theory.

In *United States v. Corr,* 543 F.2d 1042 (2d Cir. 1976), relying on *Pinkerton v. United States,* 328 U. S. 640, 90 L.Ed. 1489, 66 S.Ct. 1180 (1946), the court said:

"This decision is based upon the theory of vicarious liability which holds conspirators criminally liable for the substantive offenses of their co-conspirators committed during and in furtherance of the conspiracy." 543 F.2d at 1049.

In *United States v. Decker,* 543 F.2d 1102 (5th Cir. 1976), *reh. denied* 545 F.2d 1298, *cert. denied* 431 U. S. 906 (1977), vicarious liability in criminal conspiracies was held to be applicable to a narcotics distribution conspiracy. Conspirators were held liable for any remote sale of drugs passing through the conspiracy so long as it was within the scope of, or was a reasonably forseeable consequence of, the unlawful agreement. The trial court in our case made a finding of fact, however, that precluded conviction of

appellant for conspiracy in the sale of the 3,000 pills transferred on July 27. The court found the conspiracy extended only to the 2,000 pills transferred on the 20th and 21st of July. Appellant was convicted of possession with intent to sell for the 3,000 pills transferred on July 27. Since the scope of the conspiracy did not extend to the July 27th incident, appellant could not be convicted on a *vicarious liability theory.* While appellant did not raise such finding of fact in his brief, he did present argument to such effect at the hearing. We conclude that appellant's conviction of possession with intent to sell on July 27 must be set aside.

Appellant's final claim of error is that of double jeopardy. His claim in this regard is based on the judge's making a statement that appellant was not guilty of the count of possession with intent to sell and immediately thereafter making a statement that he was incorrect in this regard. This was merely a slip of tongue on the part of the judge, and we conclude that such cannot give rise to a valid double jeopardy claim when all of the discussion took place at the same hearing. The court's ruling was merely a clarification of an earlier misunderstanding.

We conclude that appellant's convictions of the two counts of sale of LSD, and his conviction on one count of conspiracy must stand, but that his conviction of the two counts of possession of LSD and the one count of possession with intent to sell LSD are reversed.

Affirmed in part; reversed in part.