(890 P.2d 353)
No. 70,415

STATE OF KANSAS, *Appellee*, v. SMITH N. BRICKHOUSE,
*Appellant.*

Opinion filed February 10, 1995.

*Jessica R. Kunen,* chief appellate defender, for the appellant.

*Debra A. Vermillion,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LEWIS, P.J., LARSON, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

LEWIS, J.: Defendant Smith N. Brickhouse was convicted of distribution of marijuana and possession of methamphetamine, both class C felonies, and possession of marijuana, a class A misdemeanor. He was subsequently sentenced to a controlling term of 5 to 15 years. He appeals from those convictions.

Defendant's problems stem from an agreement between Frank Cardello and Russ Gardner. Cardello, unaware that he was dealing with an undercover police officer, agreed to sell Gardner a quarter of a pound of marijuana for $575. The attempt to execute this agreement led to defendant's arrest and convictions.

After agreeing on the quantity and price of the drugs involved, Cardello told Gardner that he would require the money in advance. He indicated that after he had the money, he would arrange to meet his "connection," obtain the drugs, and deliver the amount ordered. Gardner acceded to these terms and obtained $575 in cash from his superiors. Unfortunately for Cardello and defendant, the cash was photocopied prior to being given to Gardner.

The parties to the agreement met at a Denny's restaurant in Overland Park. Cardello arrived at Denny's driving a white Honda Accord with dealer tags. After receiving the money, Cardello advised Gardner that he "would go to the Applebee's at 110th and Metcalf, meet his connection, pick up the marijuana and come right back to the Denny's to deliver the marijuana to [Gardner]."

Cardello then left Denny's and proceeded to Applebee's. Gardner called his supervisor and informed him of the arrangements. The supervisor passed along the information, and police officers soon began to converge on Applebee's in search of Cardello, who was driving the white Honda automobile.

The police followed Cardello to Applebee's, where he parked his car and went inside. In the meantime, defendant also arrived at Applebee's. As the police watched, Cardello and defendant met inside Applebee's but soon left together and stood outside the front door. After a period of time, Cardello went to his automobile and sat down in the driver's seat. The police observed defendant walk to his parked blue Honda automobile and retrieve a backpack from the inside of that vehicle. Defendant then took the backpack, walked to Cardello's vehicle, and got in the car on the passenger side. As soon as defendant was comfortably seated in Cardello's automobile, the police moved in, ordered Cardello and defendant out of the automobile, and placed them both under arrest.

A search of Cardello's vehicle revealed a gray backpack, with the main compartment open, lying between the console and the passenger seat. Also, a quarter-pound bag of marijuana was found on the car floorboard near where defendant had been seated. The backpack was found to contain $475 of the cash which Gardner had given to Cardello. The remaining $100 was found in Cardello's wallet. In addition, the authorities found in Cardello's car a small quantity of marijuana in a plastic bag between the driver's seat and the console.

After defendant had been arrested, he was subjected to a personal search. This search uncovered a small quantity of marijuana in a black fannypack being worn by defendant at the time of his

arrest. The search of defendant's person also yielded a ziplock baggy containing methamphetamine.

The police seized defendant's automobile for forfeiture purposes pursuant to K.S.A. 1993 Supp. 65-4135. This seizure was accomplished without a warrant and in the absence of any claimed exigent circumstances. The State justifies the seizure under K.S.A. 1993 Supp. 65-4135(b)(3), which permits property to be seized when there is probable cause to believe it was used to violate the Kansas Uniform Controlled Substances Act (Controlled Substances Act). The seized vehicle was impounded and subjected to an inventory search. Among the items recovered from defendant's automobile was a white plastic tube from the dash, a hand scale with a weight conversion chart from the map holder, and a mobile phone and belt pager in the glove box. In the trunk of defendant's automobile, the police found a plastic bag containing a quarter-pound of marijuana wrapped in a newspaper. Also from the trunk of the vehicle, the police recovered a first aid kit containing a hypodermic needle, a tablespoon with methamphetamine residue on it, and a plastic bag containing methamphetamine.

The admission of evidence from the various searches described was objected to, unsuccessfully, by defendant.

Other facts will be discussed when appropriate to the issues being recited.

Defendant raises several issues of error which he argues should result in reversal of his convictions.

## CARDELLO HEARSAY STATEMENTS

During the course of several conversations with police officers, Cardello gave conflicting explanations of defendant's involvement in the drug sale to Gardner. He ultimately refused to testify at defendant's trial based on his Fifth Amendment rights. As a result, statements made by Cardello to the police officers were subject to the hearsay rules at defendant's trial. One of the hearsay statements made by Cardello to police officers implicated defendant in the drug transaction. The other hearsay statement was exculpatory as to defendant. Both statements were offered for admis-

sion into evidence at defendant's trial. The trial court admitted the hearsay statements implicating defendant and refused to admit the hearsay statements which tended to exonerate defendant. Defendant argues that this decision was erroneous and that his conviction should be reversed as a result. We agree.

Approximately one week prior to trial, Cardello told the prosecutors that defendant did not know there was marijuana in the gray backpack which he delivered to Cardello. According to Cardello, he had arranged to buy the marijuana from an individual by the name of Steve Nelson, who allegedly worked with defendant at the same place of business. Nelson, by prearrangement with Cardello, placed the marijuana in defendant's car without his knowledge. Cardello then called defendant to "meet him for drinks, and once they were together, Mr. Cardello would get the marijuana out of Mr. Brickhouse's car." Cardello went on to tell the prosecutors that defendant knew nothing of the marijuana in the backpack until Cardello pulled it out of the bag. Cardello indicates that he then put the $475 in cash in the backpack with instructions to defendant to deliver the backpack to Nelson.

The prosecutors were not satisfied with this particular explanation of defendant's involvement. After the interview with Cardello was over, the prosecutors called his attorney. The State advised Cardello and his attorney that the plea agreement entered into by them would be off unless Cardello would provide truthful testimony. The prosecutors indicated that they did not believe Cardello's exculpatory explanation of defendant's role in the drug transaction.

Sometime after the conversation between the prosecutor and his attorney, Cardello retracted his statement that defendant was unaware that he was delivering drugs in the gray backpack. Cardello told the prosecutors on this occasion that he had lied earlier when he told them defendant knew nothing of the drug deal. He professed to be afraid of defendant and explained that he gave the exculpatory statement to "protect his back." He then recanted the earlier story and said defendant was involved all along and then refused to talk further with the prosecutors or police authorities.

At the time of defendant's trial, Cardello invoked his Fifth Amendment rights and refused to testify. The State wished to introduce Cardello's hearsay statements to Gardner about meeting his "connection" or "source" at Applebee's. This evidence was obviously very incriminating to defendant, who was the only person who met Cardello at Applebee's with the desired amount of marijuana in hand. Defendant objected to the admission of this portion of Cardello's hearsay statements. The trial court overruled this objection and admitted the incriminating testimony under the conspiracy exception to the hearsay rule as set forth in K.S.A. 1993 Supp. 60-460(i)(2).

Defendant's theory of defense was that he was an innocent pawn of Cardello and Nelson. Defendant insisted he did not know that the backpack he was told to deliver to Cardello contained marijuana. In order to bolster this defense, defendant sought to introduce into evidence the hearsay statement Cardello gave to prosecutors which supported the theory of defense. These statements given by Cardello to the police, and later recanted, supported defendant's theory of defense and cast doubt on Cardello's credibility. The trial court, however, refused to admit these hearsay statements of Cardello. It found that the statements were "not reliable." As a result, the only hearsay evidence the jury heard from Cardello was evidence incriminating defendant.

Our system of justice does not guarantee that a criminal defendant will receive a perfect trial. It does, however, guarantee that a criminal defendant will receive a fair trial which comports with the concepts of due process. We conclude that admitting hearsay evidence from an absent witness that is incriminating while denying admission of hearsay evidence from that same witness which is exculpatory is so unfair as to amount to a denial of due process.

In this case, the jury was asked to determine the facts. One of the facts placed into controversy by defendant was whether he was a willing supplier of drugs to Cardello or an innocent pawn used to deliver drugs he did not know existed. On this issue, the hearsay statements made by Cardello were crucial. The jury was allowed to know via hearsay that Cardello said he would meet

his "connection" or "source" at Applebee's from whom he would obtain the drugs. The evidence showed that the only person he met at Applebee's was defendant and that defendant was in possession of the drugs which were to be sold to Gardner. This was very incriminating evidence, and it was deemed by the trial court to be reliable and admissible.

The jury was denied access to evidence that, according to Cardello, defendant was an innocent pawn in the drug sale. This denied defendant evidence supportive of his theory of defense. Without the exculpatory evidence from Cardello, defendant had little with which he could refute the obvious implication that he was the "connection" or "source" of whom Cardello spoke. The trial court in this case decided one hearsay statement was reliable while the other was not. In doing so, it unreasonably interfered with the jury's factfinding duties and prevented defendant from putting on evidence crucial to his theory of defense. This was contrary to our tradition of fairness to both parties and, in our judgment, adversely affected the jury's effort to determine the true facts.

Our decision on this issue is prompted by the uneven application of the hearsay rule in this case. We are well aware that the law provides that the trial court must first determine the trustworthiness of the declarant before a declaration against interest can be admitted:

"A trial judge has wide discretion in determining the admissibility of a declaration against interest and may consider such factors as the nature and character of the statement, the person to whom the statement was made, the relationship between the parties, and the probable motivation of the declarant in making the statement." *State v. Jones*, 246 Kan. 214, 219, 787 P.2d 726 (1990).

" 'The statute does, however, require, as a preliminary measure of trustworthiness, that the trial judge, prior to admission of such a declaration, make a finding that the character of the declaration was of such nature a reasonable man would not make it unless he believed it to be true. Probability of veracity is the safeguard sought; the reasonable man test is the criterion to be used.' " *State v. Jackson*, 244 Kan. 621, 624, 772 P.2d 747 (1989) (quoting *Thompson v. Norman*, 198 Kan. 436, 442-43, 424 P.2d 593 [1967]).

In *State v. Thomas*, 252 Kan. 564, 572, 847 P.2d 1219 (1993), the Supreme Court declared that the exclusion of hearsay is

within the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion.

We do not disagree with what our Supreme Court has said on the subject at hand. We simply hold that here, under the facts presented, the uneven application of the hearsay rule was unfair and an abuse of discretion.

*State v. Josenberger*, 17 Kan. App. 2d 167, 836 P.2d 11, *rev. denied* 251 Kan. 941 (1992), is factually similar to the case at hand. In *Josenberger*, we held that it was error to exclude direct exculpatory testimony. That error was not reversible, however, because the evidence was admitted through other witnesses. In this case, the error was reversible because the testimony was directly exculpatory, was not available through the testimony of other witnesses, and was contrary to an admitted incriminating statement by the same witness.

We believe that the rationale employed in *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), is illustrative and supportive of our holding on this issue. In *Chambers*, a witness had given a written confession in which he admitted to having committing the crime with which the defendant was charged. The defendant called this individual as a witness and, on cross-examination by the State, the witness repudiated the confession and asserted an alibi. The defendant then sought to cross-examine the witness concerning his alibi, the circumstances of his repudiation, and one oral confession he had made to other witnesses. The trial court refused to permit such cross-examination because of the rule that a party may not impeach his own witness. The defendant then sought to call three other witnesses who would each testify that the individual involved had orally confessed to the crime. The testimony of these three witnesses was excluded as hearsay. Chambers argued that he was thwarted in his attempt to present his defense by the application of Mississippi rules of evidence. He contended that the application of these evidentiary rules rendered his trial fundamentally unfair and deprived him of due process of law. The Supreme Court in *Chambers* agreed with the defendant. The court held that "where constitutional rights directly affecting the

ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." 410 U.S. at 302.

We do not suggest that in this case the hearsay rule was necessarily applied in a mechanistic manner. However, here, the hearsay rule was applied to deprive defendant of evidence vital to his theory of defense, while at the same time that rule was manipulated to admit into evidence a hearsay statement of the same declarant incriminating defendant. We suggest that such an application of the hearsay rule is unfair and deprived defendant of the right to present his theory of defense to the jury. Whatever name one may wish to use, the admission of an incriminating hearsay statement, coupled with the refusal to admit an exculpatory hearsay statement by the same declarant, is so fundamentally unfair as to be an abuse of discretion and a denial of due process under the facts presented.

We hold that if an incriminating hearsay statement is admitted in an effort to convict a defendant, an exculpatory hearsay statement by the same declarant which tends to exonerate that defendant or which supports the theory of defense may not be denied admission into evidence on the grounds that it is unreliable. Application of the hearsay rule in this manner offends our sense of justice and fair play and affects the jury process in an unacceptable manner. The question of whether the exculpatory statement is reliable is overridden by the inherent unfairness that will occur if that statement is excluded while a similar hearsay statement that is incriminating is admitted.

Our decision requires that we reverse defendant's conviction and remand the matter for a new trial. In doing so, we note that we have examined defendant's objections to the admission of the statements by Cardello as to meeting his "connection" or "source." We find those objections to be without merit. The trial court did not err in admitting that statement. The error came about in its refusal to admit the exculpatory statement made by Cardello which supported the theory of defense.

## SEARCH AND SEIZURE ISSUES

Although we have reversed defendant's convictions, the other

issues raised on appeal will have an important impact on retrial. For that reason, we will decide those issues. We begin with the search and seizure issues raised.

## A. SEARCH OF CARDELLO'S AUTOMOBILE AND DEFENDANT'S PERSON

At trial, defendant sought to suppress all evidence seized from his person and from Cardello's automobile. We begin by noting that defendant was, at best, a passenger in Cardello's car, and ordinarily a passenger lacks standing to challenge the validity of the search of another's car unless that person can show ownership, possession, or control of the vehicle. *State v. Epperson*, 237 Kan. 707, Syl. ¶ 6, 703 P.2d 761 (1985). An individual may challenge such a search, however, if the search stems from an unlawful stop or unlawful arrest. Defendant contends his arrest was unlawful and that all evidence seized from the vehicle belonging to Cardello or from the person of defendant was seized pursuant to an unlawful arrest and should not have been admitted at trial. It is defendant's position that the police officers lacked probable cause to arrest him. We do not agree.

The validity of a warrantless arrest depends upon whether, at the moment the arrest was made, the officer had probable cause to make the arrest. *State v. Press*, 9 Kan. App. 2d 589, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984). " 'Probable cause for arrest exists if facts and circumstances within an arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed.' " 9 Kan. App. 2d at 592.

"When the constitutional validity of an arrest is challenged, it is the function of the court to determine whether the facts within the knowledge of the officers at the moment of arrest and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *State v. Parks*, 5 Kan. App. 2d 644, 647, 623 P.2d 516 (1981).

The issue is whether a prudent person could believe under the circumstances shown that defendant was committing a crime. We conclude that the evidence is overwhelming in support of the

proposition that probable cause existed to believe that defendant was committing a crime when arrested. The police had information that Cardello had agreed to sell drugs to Gardner and that Cardello was going to go to Applebee's and meet his source or connection. The police followed Cardello to Applebee's, where he met defendant; defendant retrieved a gray backpack from his blue Honda and joined Cardello in his white Honda. This information is certainly sufficient to provide probable cause to believe that a drug transaction was occurring and that defendant was a party to that transaction. We hold that there was probable cause to arrest defendant and that the fruits of the search of Cardello's car and defendant's person, incident to that arrest, were admissible.

## B. SEIZURE OF DEFENDANT'S AUTOMOBILE— INVENTORY SEARCH

This issue is considerably more troublesome. The search of defendant's automobile was conducted after it was seized, without a warrant, pursuant to K.S.A. 1993 Supp. 65-4135. The State seeks to justify the seizure and subsequent inventory search of defendant's automobile by invoking the state forfeiture statute. The State does not argue that there were any exigent circumstances or other exceptions which existed to justify the warrantless seizure of defendant's vehicle.

Defendant argues that the warrantless seizure of his vehicle violated his Fourth Amendment rights and that any evidence obtained as a result of that seizure should be suppressed.

The issue presented is one of first impression in this state but has been the subject of a number of federal and other state decisions.

The general rule is that all warrantless searches and seizures are invalid and evidence obtained as a result of an invalid search is inadmissible in a criminal prosecution of the party whose rights were violated. There are a number of exceptions to that general rule which have been developed by the courts through the years. See *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *State v. Teeter*, 249 Kan. 548, 550, 819 P.2d 651 (1991).

The seizure of defendant's vehicle was accomplished without a warrant, as was the subsequent inventory search. The State does not assert the existence of any recognized exception to the warrant requirement. The State stands on the proposition that it had probable cause to seize the vehicle under the Kansas forfeiture statute and that this statute validates the seizure and subsequent inventory search.

The question we must decide is whether the warrantless seizure of a vehicle pursuant to our forfeiture statute was reasonable under the constitutional provisions against unreasonable searches and seizures. We hold that it was.

The Kansas forfeiture statute, K.S.A. 1993 Supp. 65-4135(a)(4), permits the forfeiture of vehicles which "are used or intended for use to transport or in any manner to facilitate the transportation, sale, receipt, possession, concealment, purchase, exchange or giving away of" controlled substances. K.S.A. 1993 Supp. 65-4135(b) goes on to provide:

"Property subject to forfeiture under this act may be seized by any law enforcement officer upon process issued by any district court having jurisdiction over the property. *Seizure by a law enforcement officer may be made without process if*:

(1) The seizure is incident to a lawful arrest or a lawful search conducted by a law enforcement officer;

(2) the property subject to seizure has been the subject of a prior judgment in favor of the state or municipality under this act; or

(3) *there is probable cause to believe that the property was used in violation of this act*." (Emphasis added).

Subsection (d) of the statute provides that property seized under the forfeiture act may be moved to a place designated by the law enforcement agency.

Under the Kansas forfeiture statute, the police officers were authorized to seize defendant's vehicle and remove it to a designated location if they had probable cause to believe that the vehicle had been used in violation of the Controlled Substances Act.

We have examined the record and conclude that it provides ample support for a finding that there was probable cause to believe defendant's vehicle had been used to transport controlled

substances in violation of the Controlled Substances Act. The evidence clearly indicates that the vehicle was used to transport the gray backpack to Applebee's and that the backpack, when removed from the vehicle, was found to contain controlled substances. We therefore hold that the warrantless seizure of defendant's vehicle was authorized by K.S.A. 1993 Supp. 65-4135(b)(3).

The forfeiture statutes of this state contemplate that a civil action will follow to forfeit the property seized. The mere fact that the seizure was permitted or authorized by statute does not necessarily mean that evidence obtained in the ensuing inventory search is admissible in a criminal action.

"[The government] contends that the plain language of the civil forfeiture statute absolves it of any responsibility to obtain a warrant in executing seizures of property used in connection with controlled-substance transactions. The government argues that the forfeiture statute represents congress's decision to create a new exception to the fourth amendment's warrant requirement. In essence, it argues that congress has amended the constitution. To state the position is to refute it, because congress cannot authorize by legislation what the constitution forbids. *Marbury v. Madison*, 5 U.S. 87, 1 Cranch 137, 2 L. Ed. 60 (1803); *see also Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S. Ct. 2535, 2539, 35 L. Ed. 2d 596 (1973) ('no act of Congress can authorize a violation of the constitution')." *U.S. v. Lasanta*, 978 F.2d 1300, 1304 (2d Cir. 1992).

The Kansas Legislature has authorized, by statute, the warrantless seizure of a vehicle based upon probable cause that it had been used to facilitate a drug transaction. The question is whether such a warrantless seizure violates constitutional prohibitions against illegal search and seizure. We hold that it does not.

We believe that the issue was basically decided in 1967 in the case of *Cooper v. California*, 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788 (1967). In that case, the defendant was arrested on a narcotics violation, and his car was seized without a warrant. The seizure was justified under a California statute which authorized seizure of a vehicle used to store, conceal, transport, or sell narcotics. One week after the vehicle was seized, it was searched, and narcotics were discovered. The State conceded that the search was not conducted incident to a lawful arrest and sought

to justify the search solely on the theory that the vehicle was in the lawful custody of the State under its forfeiture statute. The Supreme Court held the search lawful and explained:

"But the question here is not whether the search was authorized by state law. *The question is rather whether the search was reasonable under the Fourth Amendment.* Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one. While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' . . . the reason for and nature of the custody may constitutionally justify the search. . . . Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States v. Rabinowitz,* 339 U.S. 56, 66. *Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding.*" (Emphasis added.) 386 U.S. at 61-62.

There have been considerable debate through the years as to the proper interpretation of *Cooper.* Most courts have construed it broadly as authorizing the sort of procedure employed in the instant matter. In this case, the vehicle was in the lawful custody of the State when it was searched under circumstances less egregious than those shown in *Cooper.* It appears to us that *Cooper* upholds the warrantless seizure of a vehicle pursuant to a state forfeiture statute as being reasonable. Once the seizure is accomplished, the police may search the vehicle in an inventory search at their leisure, and the fruits of the search are admissible as evidence. As we interpret *Cooper,* a warrantless seizure such as that employed in the instant matter is not unreasonable under the Fourth Amendment.

The Kansas forfeiture statutes "are similar to the federal forfeiture statute. See 21 U.S.C. § 881 (1988)." *City of Lenexa v. A Maroon 1978 Chevrolet*, 15 Kan. App. 2d 333, 335, 807 P.2d 694 (1991). Our statute is similar to its counterpart in the Uniform Controlled Substances Act, 9 U.L.A. § 505 (1988). There are certain differences between our act, the federal act, and the Uniform Controlled Substances Act, but they are minor and of little importance. For all intents and purposes, the three are identical. For these reasons, federal decisions and some sister state decisions are relevant.

There is a split in the federal circuits. The majority of the circuits that have considered the question have held that a warrantless seizure of a vehicle under the federal forfeiture act does not violate the Fourth Amendment and that evidence obtained in a subsequent inventory search is admissible in a criminal prosecution. *U.S. v. Decker*, 19 F.3d 287 (6th Cir. 1994); *U.S. v. Pace*, 898 F.2d 1218 (7th Cir. 1990); *U.S. v. Linn*, 880 F.2d 209 (9th Cir. 1989); *U.S. v. Valdes*, 876 F.2d 1554 (11th Cir. 1989); *U.S. v. One 1978 Mercedes Benz, Four-Door Sedan*, 711 F.2d 1297 (5th Cir. 1983); *United States v. Kemp*, 690 F.2d 397 (4th Cir. 1982); *United States v. Bush*, 647 F.2d 357 (3d Cir. 1981).

Only two circuits have held the procedure in question to have been a violation of a defendant's Fourth Amendment rights. See *U.S. v. Dixon*, 1 F.3d 1080 (10th Cir. 1993); *U.S. v. Lasanta*, 978 F.2d 1300; *U.S. v. $149,442.43 in U.S. Currency*, 965 F.2d 868 (10th Cir. 1992).

It is relevant to note that in both *Dixon* and *Lasanta*, the court, while holding that the warrantless seizure violated a defendant's Fourth Amendment rights, still found another method of admitting the evidence. In *Dixon*, the court held the search and seizure to be illegal but concluded that a pound of cocaine found days after the car was seized and discovered only when the cellular phone was being removed, was in *plain view* and admissible under that exception to the warrant requirement. 1 F.3d at 1084. In *Lasanta*, after concluding that the search and seizure was illegal, the court found it to be *harmless error* and affirmed the conviction. 978 F.2d at 1306.

We have examined these federal decisions and find the rationale employed by the majority view to be persuasive.

There are a number of state decisions on the issue. In *State v. McFadden*, 63 Wash. App. 441, 449, 820 P.2d 53 (1991), *rev. denied* 119 Wash. 2d 1002 (1992), the facts were similar to those in the matter under consideration. In that case, the Washington court held: "We hold that a motor vehicle seized pursuant to [Washington forfeiture statute] on probable cause that it is used to facilitate a drug transaction is subject to a valid inventory search and evidence found in the course of such a search is admissible at trial." See *Lowery v. Nelson*, 43 Wash. App. 747, 719 P.2d 594, *rev. denied* 106 Wash. 2d 1013 (1986).

The Supreme Court of Utah reached a contrary result in *Davis v. State*, 813 P.2d 1178 (Utah 1991).

We join the majority of the federal and state decisions which have considered the issue and hold that a warrantless seizure of a motor vehicle based on probable cause that the vehicle was used to violate the Controlled Substances Act does not violate the Fourth Amendment prohibition against unreasonable searches and seizure. We also hold that such a seizure subjects the vehicle to a valid inventory search and that evidence found in the course of such search is admissible in a criminal prosecution.

There are numerous reasons set forth by the various decisions for upholding the search and seizure under the circumstances outlined.

We prefer the rationale used by the Third Circuit in *United States v. Bush* and by the Seventh Circuit in *U.S. v. Pace*. Those courts reasoned that if the warrantless arrest of an individual based upon probable cause was constitutional, then the warrantless seizure of an automobile based on probable cause must also be constitutional. *Pace*, 898 F.2d at 1242; *Bush*, 647 F.2d at 370. The logic in *Pace* is particularly compelling. If the Constitution authorizes the seizure of one's person without a warrant based upon probable cause that the individual has committed a crime, can it be said that this same document would prohibit the *seizure of property* based upon probable cause that the property had been used to commit a crime? We think not. We are unable to say

that under our system of justice an individual's personal freedom can carry less protection than the right to privacy in his or her automobile. It is a matter of elemental criminal law that an individual's personal freedom may be restrained without a warrant based upon probable cause that he or she has committed a crime. That being true, who can logically conclude that the State may not permit an individual's property to be seized under like circumstances?

We focus on the issue as framed by the United States Supreme Court in *Cooper v. California.* "But the question here is not whether the search was authorized by state law. *The question is rather whether the search was reasonable under the Fourth Amendment.*" 386 U.S. at 61. In this context, we must decide whether the seizure of defendant's vehicle was reasonable under the Fourth Amendment. We hold that it was.

In the matter now under consideration, defendant's person was seized without a warrant, and he was placed under arrest and deprived of his freedom. This warrantless seizure was accomplished upon probable cause that he had committed a crime, and such a seizure is universally held to be reasonable and constitutional. If the seizure of his person without a warrant on probable cause was reasonable and constitutional, we are unable to logically conclude that the seizure of his automobile was not. The State has permitted the arrest of an individual without a warrant based upon probable cause that the individual has committed a crime. Such an arrest is constitutionally permitted. The State has now authorized the seizure of a vehicle without a warrant based upon probable cause that the vehicle was used in a drug transaction. That enactment is reasonable and constitutional. We hold that a warrantless seizure pursuant to K.S.A. 1993 Supp. 65-4135 is reasonable and does not violate the Fourth Amendment of the Constitution of the United States or its counterpart in the Kansas Constitution.

The seizure of defendant's automobile was valid. The record shows that after the seizure, the vehicle was subjected to a valid inventory search that complies in all respect with state and federal law. As a result, the evidence obtained in that search will be admissible against defendant at the trial on remand.

## MULTIPLICITY

Defendant's final argument is that the crime of distribution of marijuana is multiplicitous with the crime of possession of marijuana.

Defendant argues that the same drugs were involved in the distribution and possession convictions. He cites *State v. Becknell,* 5 Kan. App. 2d 269, 615 P.2d 795 (1980), in support of his argument. In *Becknell,* we held that convictions for the possession of LSD and the sale of LSD were multiplicitous when the "counts of possession in this case were possession of the same drugs involved in the sale transactions for which appellant was prosecuted." 5 Kan. App. 2d at 275.

We have examined *Becknell,* compared it with the facts of this case, and hold that it does not apply. The problem with defendant's argument is that there are three distinct quantities of marijuana which he was charged with having possessed. We begin with the quarter pound of marijuana he is charged with having sold or delivered to Cardello. Secondly, there is the personal use amount of marijuana seized from his fannypack. Finally, there is the quarter pound of marijuana found in the trunk of his car.

The evidence in this case clearly shows that there were adequate separate amounts of marijuana seized from different locations to support defendant's convictions for distribution of marijuana and simple possession of marijuana. Facts similar to those present in *Becknell* are not present in the instant matter, and *Becknell* does not apply.

The simple possession charge can stand on the basis of the quantity seized from defendant's fannypack. The distribution of marijuana charge can stand on the quarter pound seized from the floorboard of Cardello's car.

Based on the facts of this case, the convictions for distribution of marijuana and possession of marijuana are not multiplicitous.

Defendant's convictions are reversed, and the matter is remanded for a new trial consistent with this opinion.

Reversed and remanded.