(101 P.3d 732)
No. 91,115

STATE OF KANSAS, *Appellee,* v. DUSTIN E. MERCER, *Appellant.*

Opinion filed December 10, 2004.

*Michelle Davis,* assistant appellate defender, for appellant.

*Marc Goodman,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before HILL, P.J., MARQUARDT and JOHNSON, JJ.

MARQUARDT, J.: Dustin E. Mercer appeals his jury conviction for rape and abuse of a child. We affirm.

The victim, B.B., was a 2-year-old girl at the time of the assault. B.B.'s mother (Mother) gave B.B. a bath the evening of September 22, 2000, and did not notice any marks on B.B.'s back or any injury to her eye. On September 23, 2000, B.B.'s babysitter called Mother and reported that she thought B.B. had a cold and may have been running a fever because B.B. was very lethargic and wanted to sleep all day. B.B.'s father (Father) picked B.B. up at the babysitter's house. Later in the day, Father noticed a big red mark on B.B.'s back which he thought was a rash or a bruise. Eventually, Father took B.B. to the hospital. At the hospital, Father's sister took B.B. to the bathroom and discovered dark spots in her underwear. A sexual assault exam was performed on B.B. which indicated that she had been sexually assaulted.

Detective Mark Schondelmaier testified that the focus of his investigation narrowed to Mercer, who was Mother's boyfriend. Mercer lived with B.B. and Mother at the time B.B.'s injuries were discovered. According to Mercer, he got home from a bar at approximately 12:30 a.m. on September 23. Then, at approximately 3:30 or 4:00 a.m., Mercer noticed that B.B. was "covered with poop" so he gave her a bath and put her sheets in the sink. Mercer testified that later in the morning, he got B.B. dressed and put her in the car to go to daycare. Detective Schondelmaier testified that it appeared to him that B.B. had a scalding burn on her back. Detective Schondelmaier also testified that Mercer told him many different stories about how he bathed B.B. and that Mercer was not as cooperative as the other witnesses. Once Detective Schondelmaier learned that sperm had been discovered in the samples taken from B.B., he talked to Father, who told Detective Schondelmaier that he had had a vasectomy.

Mercer was charged with one count each of rape and assault of a child. At trial, Diana Goll, a registered nurse, testified about the results of the sexual assault examination she conducted on B.B. Pictures of B.B.'s physical injuries and the testimony of Dr. Lynn Sheets, Director of Child Abuse Services at Kansas University Children's Center and Kansas University Medical Center, were also

presented. Dr. Sheets testified that in her opinion, the injury to B.B.'s eye was caused by blunt trauma, such as a punch. She also testified that the injury to B.B.'s back was consistent with a "scald type burn" with a thumb-print sized unburned area suggesting someone holding B.B. in a "football hold" under hot liquid or pouring hot liquid over her. According to Dr. Sheets, the temperature of the water would have been over 120 degrees. The temperature of the hot water at Mother's house was 127 degrees. If B.B. had clothes on, to get such a burn she must have been in the water for 6-10 seconds or longer. Dr. Sheets also testified that the pictures revealed symmetric burns on both of B.B.'s elbows, which either came from hot liquid or friction. Dr. Sheets testified that in her opinion, all of the burns caused B.B. extreme pain.

The State presented forensic evidence linking Mercer to B.B.'s rape. Kansas Bureau of Investigation (KBI) forensic scientist Lance Antle testified that blood and semen were found in the crotch of B.B.'s underwear as well as on B.B.'s vaginal swab. Antle testified that the sperm found in B.B.'s underwear was Mercer's sperm and a 1 in 9,800 match in the Caucasian population.

Prior to the start of the trial, the State filed a motion in limine requesting that the trial court not allow any statements or evidence regarding any statements made by B.B. The State argued that B.B.'s statements did not fall within the hearsay exception under K.S.A. 2003 Supp. 60-460(dd), or K.S.A. 22-3434. The trial court ordered that

"no reference will be made to the statement or use be made from the making of the statement until such time as there has been a motion filed and the Court has conducted a hearing to determine the potential admissibility of the statement under K.S.A. 60-460 Subsection (dd), . . . [s]o, to that extent your motion in limine is granted until modified."

During the trial, Mercer asked the trial court to allow testimony from a State transportation worker regarding statements allegedly made by B.B. when she was 2½ years old. The trial court ruled that B.B.'s statements were inadmissible. The trial court stated that 60-460(dd) requires child hearsay statements to be offered to prove a crime, and the trial court determined that in Mercer's case the statements were offered to disprove the crime. The trial court also

noted that B.B. was 29 months old at the time of the incident. At the time of trial, B.B. was 4 years old. The trial judge stated, "I don't think I can conclude based on what I have heard here that any of these types of statements are apparently reliable or that they have some indicia of reliability that's independent of just the statement itself."

A jury convicted Mercer of one count each of rape and abuse of a child. He was sentenced to 155 months in prison for rape and a consecutive 32 months for abuse of a child. Mercer timely appeals.

Mercer argues that it is fundamentally unfair for 60-460(dd) to admit hearsay statements of a child only to prove the crime, but not to disprove the crime. Mercer asserts that this amounts to a denial of his due process rights.

Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the trial court's interpretation of a statute. *State v. Maass*, 275 Kan. 328, 330, 64 P.2d 382 (2003).

According to K.S.A. 2003 Supp. 60-460, hearsay evidence is admissible when it meets the following exception:

"(dd) *Actions involving children.* In a criminal proceeding or a proceeding pursuant to the Kansas juvenile justice code or in a proceeding to determine if a child is a child in need of care under the Kansas code for care of children, a statement made by a child, *to prove the crime* or that a child is a juvenile offender or a child in need of care, if:

(1) The child is alleged to be a victim of the crime or offense or a child in need of care; and

(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced to make the statement falsely by use of threats or promises." (Emphasis added.)

"The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

"Criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the

rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. [Citation omitted.]" *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001).

While the legislature has the authority to define the admissibility of evidence, those rules cannot impair constitutional rights. *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 186, 959 P.2d 940, *rev. denied* 265 Kan. 885 (1998) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 35 L. Ed. 2d 297, 93 S. Ct. 1038 [1973]). Mercer contends that *State v. Brickhouse*, 20 Kan. App. 2d 495, 890 P.2d 353, *rev. denied* 257 Kan. 1093 (1995), supports his assertion that admitting inculpatory hearsay evidence while excluding exculpatory hearsay evidence amounts to a denial of due process.

According to *Brickhouse*, "if an incriminating hearsay statement is admitted in an effort to convict a defendant, an exculpatory hearsay statement *by the same declarant* which tends to exonerate that defendant or which supports the theory of defense may not be denied admission into evidence on the grounds that it is unreliable." (Emphasis added.) 20 Kan. App. 2d at 503. In *Brickhouse*, a witness made statements which both implicated Brickhouse in a crime and bolstered Brickhouse's defense. The trial court admitted the incriminating statements under the conspiracy exception to the hearsay rule but refused to admit the exculpatory statements, finding them unreliable. This court determined that this application of the hearsay rule "offends our sense of justice and fair play and affects the jury process in an unacceptable manner." 20 Kan. App. 2d at 503.

Likewise, citing *Brickhouse* and *Chambers*, the Kansas Supreme Court determined that "[w]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of justice." *State v. Hills*, 264 Kan. 437, 448, 957 P.2d 496 (1998). The *Hills* court determined that since the State admitted incriminating portions of the defendant's statement, he had a right to introduce exculpatory segments even if he did not testify and the hearsay rule barred the admission of the evidence. 264 Kan. at 448.

In Mercer's trial, the State did not offer any incriminating hearsay statements made by B.B. As such, *Brickhouse* and *Hills* do not apply. The trial court's decision did not deny Mercer a fair trial.

Finally, when the trial court determined that B.B.'s hearsay statements were inadmissible, it also concluded that B.B. was unavailable because her statements were not reliable. According to K.S.A. 2003 Supp. 60-460(dd)(2), B.B.'s statements would not have been admissible, regardless of the purpose of admission.

"The admission of evidence lies within the sound discretion of the trial court. [Citation omitted.] An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. [Citation omitted.]" *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

According to the Kansas Supreme Court, the age of the child, the language used by the child, the mental state of the child, and the spontaneity and consistent repetition of the child's statements are among the factors to consider in determining the reliability of a sexually abused child's statements. *State v. Bratt*, 250 Kan. 264, 271, 824 P.2d 983 (1992); *State v. Kuone*, 243 Kan. 218, 220, 757 P.2d 289 (1988). In this case, B.B. was only 2 years old at the time she allegedly made the statements that Mercer attempted to introduce. Although these statements were alleged to have been spontaneous and uncoerced, considering B.B.'s age and the unclear language used by B.B., the trial court did not abuse its discretion by determining that B.B.'s hearsay statements were unreliable.

Mercer claims that he did not offer B.B.'s hearsay statements to disprove the crime; instead, he asserts that he offered the statements to prove that either Mother or Father committed the crime. Inasmuch as the trial court determined that B.B.'s testimony was unreliable, it is inadmissible hearsay and its exclusion did not violate Mercer's due process rights.

Mercer argues that the trial court erred by not instructing the jury on the offense of misdemeanor battery. Mercer contends that

misdemeanor battery is a lesser included offense of child abuse and the trial court has a duty to instruct on lesser included crimes even if the defendant fails to request the instruction. Mercer failed to request the battery instruction or object to its exclusion.

K.S.A. 2003 Supp. 22-3414(3) states that when there is some evidence that reasonably justifies a conviction of some lesser included crime, the judge shall instruct the jury as to the crime charged and any such lesser included crime. However,

"[n]o party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 2003 Supp. 22-3414(3).

The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. *State v. Sims,* 262 Kan. 165, 172, 936 P.2d 779 (1997).

This court has found that battery is a lesser included offense of child abuse. See *State v. Allison,* 16 Kan. App. 2d 321, 323-24, 823 P.2d 213 (1991).

K.S.A. 21-3609 provides: "Abuse of a child is intentionally torturing, cruelly beating, shaking which results in great bodily harm or inflicting cruel and inhuman corporal punishment upon any child under the age of 18 years." According to K.S.A. 2003 Supp. 21-3412, battery is: "(1) Intentionally or recklessly causing bodily harm to another person; or (2) intentionally causing physical contact with another person when done in a rude, insulting or angry manner."

Here, the jury heard Dr. Sheets' testimony stating: "I think most everybody in the room has experienced a burn and knows that it is extreme pain, and I think this was an inflicted injury, so yes this would be infliction of extreme pain." Moreover, the trial court gave the jury a definition of torture that stated: "[T]he term 'tortured' means to inflict intense pain to body or mind for purposes of punishment or for sadistic pleasure." Considering Dr. Sheets' testi-

mony and the definition of torture, the jury likely determined that Mercer tortured B.B. by burning her.

Additionally, the verdict sheet requested that the jury determine whether Mercer was guilty of abuse of a child "by means of injuring [B.B.'s] eye; or by means of burning·or scalding [B.B.]; or by means of both injuring [B.B.'s] eye and burning or scalding [B.B.]" The jury convicted Mercer of child abuse only on the ground of burning or scalding B.B. Thus, the fact that the jury distinguished between the eye and burn injuries seems to support the conclusion that B.B.'s burn injury constituted torture and, therefore, amounted to child abuse. The trial court's failure to instruct the jury on battery was not clearly erroneous.

Mercer argues that the term "torture" does not require additional definition and, therefore, the trial court erred by defining "torture" to the jury. According to Mercer, the prosecutor and the trial court overstepped their roles by adding this instruction.

"When reviewing challenges to jury instructions, this court must consider the instructions as a whole and not isolate any one instruction. ' "If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have· been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citations omitted.]" ' " *State v. Mays,* 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

The State requested an instruction defining "torture" because the general understanding of the word connotes extremely heinous actions beyond striking or burning. Mercer objected on the ground that the instruction was not necessary. The trial court defined "torture" "in order to avoid the question that may inevitably come from the jury."

The Pattern Instructions for Kansas (PIK) do not define the term "torture." Mercer cites several out-of-state decisions to support his argument. The only Kansas case dealing with the definition of "torture" is *State v. Bruce,* 255 Kan. 388, 874 P.2d 1165 (1994). In *Bruce,* while determining that child abuse is not a specific intent crime, the court applied the following definition of torture: " 'Torture' means '[t]o inflict intense pain to body or mind for purposes of punishment.' " 255 Kan. at 394 (quoting Black's Law Dictionary 1490 [6th ed. 1990]).

The trial court's definition in Mercer's case was almost exactly the same as that used in *Bruce*. The issue then is whether the trial court erred in giving the instruction.

If the facts of a case make the addition of an instruction or modification of an applicable Kansas pattern instruction necessary, a trial court should make such addition or modification. *State v. Kleypas*, 272 Kan. 894, 1035, 40 P.3d 139 (2001), *cert. denied* 537 U.S. 834 (2002). However, the PIK instructions and recommendations should be followed absent such need. 272 Kan. at 1035. A term which is widely used or easily comprehended by individuals of common intelligence does not require a defining instruction. *State v. Roberts-Reid*, 238 Kan. 788, 789, 714 P.2d 971 (1986). It is only when the instructions as a whole would mislead the jurors, or cause them to speculate, that additional terms should be defined. *State v. Phelps*, 28 Kan. App. 2d 690, 695, 20 P.3d 731, *rev. denied* 271 Kan. 1041 (2001).

The definition given by the trial court has been used by the Kansas Supreme Court. Thus, the trial court properly instructed the jury on the law relevant to Mercer's charges. Considered as a whole, the jury instructions properly and fairly stated the law with regard to Mercer's case and were not misleading. Therefore, the giving of the instruction on torture does not constitute reversible error.

Affirmed.