No. 95,138

STATE OF KANSAS, *Appellee*, v. VACCARO M. STANO, *Appellant*.

(159 P.3d 931)

Opinion filed June 8, 2007.

*Reid T. Nelson,* of Capital and Conflicts Appellate Defender Appeals Office, of Topeka, argued the cause and was on the brief for appellant.

*Robert D. Hecht,* district attorney, argued the cause, and *Jamie L. Karasek,* assistant district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Vaccaro Stano appeals from his conviction of first-degree, premeditated murder. The defendant contends before this court that his conviction must be reversed based upon the following claims of error: (1) the exclusion of his exculpatory statement to police; (2) the admission of preliminary hearing testimony at trial of an unavailable witness; (3) the trial court's failure to provide a cautionary instruction concerning informants' testimony; and (4) prosecutorial misconduct during closing argument. We have considered the defendant's claims, find no reversible error occurred, and affirm his conviction.

Duane Hayes was shot in the head in his own driveway in Topeka on the evening of February 26, 2003, and died from his wound. The defendant was charged with first-degree, premeditated murder in conjunction with Hayes' death.

During the 9 months before his death, Hayes had been a habitual user of crack cocaine. Steve Bell, one of Hayes' drug suppliers, sometimes acted as a "drug creditor" for Hayes, where Hayes would allow Bell to use his car in exchange for two or more pieces of crack. Bell testified that Hayes called him on the evening of the shooting and asked Bell if he wanted to borrow Hayes' car, according to their deal. Because Bell was already borrowing his girlfriend's car that evening, Bell testified that he asked the defendant, who was with him at the time, if he would be interested in using Hayes' car. The defendant said he would be interested, and the three men met at a gas station. The defendant and Hayes left the station in Hayes' car, and Bell went home.

According to Bell, the defendant called Bell shortly thereafter, told Bell he had been robbed, and told Bell to meet him and bring a gun. Bell called the defendant back to find out where he was; the defendant told him that he was at Hayes' house. Bell arrived and found the defendant and Hayes outside. Hayes was angry because the defendant had only given him one piece of crack instead of two. The defendant wanted the car and grabbed the gun from Bell's car. Hayes rushed at the defendant and the two men wrestled for a moment; when the defendant broke free, he shot Hayes in the head. He later shot Hayes a few more times. The defendant then wiped down Hayes' car and jumped into Bell's car with Bell, and the two men drove away. Bell testified that the defendant threatened to kill him and his mother if he ever told anyone about the incident.

The defendant's wife, Tanya, was awakened by the sound of gunshots. She testified that she found her husband dead at the end of the driveway. He had been shot once in the back, once in the shoulder, and once in the head. Tanya found a baseball cap, a lighter, and a pack of cigarettes lying nearby; the Hayes' car was parked down the street.

The defendant's palm print was found on the windshield of the Hayes' car. DNA testing revealed that there was 10 times more of the defendant's DNA on the baseball cap than that of the other two contributors.

In addition to Bell and Tanya Hayes, several other witnesses testified at trial regarding the events that evening. Four neighbors testified that they heard gunshots. Two neighbors testified that they saw two men drive away from the scene after they had heard gunshots.

Tishaun Berry testified that she had met Bell earlier that month at a gas station and had given him her phone number. Berry was going to meet Bell on the evening of February 26, but she wanted to know if Bell knew someone who could come along to go out with Berry's friend Siobhan Plunkett. Bell told Plunkett to call the defendant and gave her his cell phone number. Plunkett testified that she called the number on February 26 and was asked to hold on. While she was waiting, Plunkett, Berry, and Plunkett's cousin

overheard an argument on the other end of the phone between two men about money and drugs, followed by loud noises. Plunkett's cousin, Aaron Quarles, testified that he thought the noises were gunshots.

In addition, three of the defendant's acquaintances testified that the defendant told them he murdered Hayes and provided details about the murder. DaMario Brooks and Terence Wilkins both testified to this effect at trial. Eugene Greene provided a written statement to the police regarding the defendant's comments to Greene concerning the murder and his interactions with the defendant after the night of the murder. Greene testified at the preliminary hearing; his statement was admitted into evidence and provided part of the basis for his direct and cross-examination at the preliminary hearing.

Greene could not be located to testify at trial. The trial court determined that he was unavailable as a witness and authorized the State to read his preliminary hearing statement and testimony at trial.

(1) *The exclusion of the defendant's exculpatory statements to the police*

The defendant did not testify at trial. The State called Detective Louis Randall, the officer who investigated Hayes' murder, as a witness. At no point on direct examination did the State question the detective regarding his interrogation of the defendant. However, twice during defense counsel's cross-examination of Detective Randall, counsel attempted to elicit testimony from him that the defendant told the detective during the interrogation that "he didn't know anything" about the murder. On both occasions, the trial court sustained the State's hearsay objection.

The defendant acknowledges that his statements to the detective were hearsay, but he argues that the court violated his right to a fair trial by excluding his hearsay statements to the detective when it allowed three other witnesses—Brooks, Wilkins, and Greene—to testify as to incriminating statements that the defendant made to them regarding his participation in the murder. Specifically, the defendant argues that the exclusion of his exculpatory hearsay

statements to Detective Randall and the admission of his inculpatory statements to Brooks, Wilkins, and Greene violated his constitutional right of due process as articulated in *Chambers v. Mississippi*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), and *State v. Brickhouse*, 20 Kan. App. 2d 495, 890 P.2d 353, *rev. denied* 257 Kan. 1093 (1995). In the alternative, the defendant argues that the statements should have been admitted under K.S.A. 60-462.

*Standard of Review*

"This court has previously recognized that under the state and federal Constitutions a defendant is entitled to present the theory of his or her defense and that the exclusion of evidence that is an *integral* part of that theory violates a defendant's fundamental right to a fair trial. [*State v.*] *Mays*, 254 Kan. [479,] 486[, 866 P.2d 1037 (1994)] (quoting *State v. Bradley*, 223 Kan. 710, Syl. ¶ 2, 576 P.2d 647 [1978]); *State v. Gonzales*, 245 Kan. 691, 699, 783 P.2d 1239 (1989). ' "Few rights are more fundamental than that of an accused to present witnesses in his own defense." ' *Gonzales*, 245 Kan. at 699 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 93 S. Ct. 1038 [1973]). The right to present a defense is, however, subject to statutory rules and case law interpretation of rules of evidence and procedure. *State v. Bedford*, 269 Kan. 315, 319, 7 P.3d 224 (2000); *State v. Davis*, 256 Kan. 1, 11, 883 P.2d 735 (1994); *Bradley*, 223 Kan. at 714." *State v. Evans*, 275 Kan. 95, 102, 62 P.3d 220 (2003).

The admission or exclusion of hearsay evidence is within the sound discretion of the trial court. See *State v. Thomas*, 252 Kan. 564, 572, 847 P.2d 1219 (1993). " 'The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' " *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005) (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 [1996]). Nevertheless, "[w]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of justice." *State v. Hills*, 264 Kan. 437, Syl. ¶ 2, 957 P.2d 496 (1998). In some instances, " '[t]he admission of an incriminating hearsay statement, coupled with the refusal to admit an exculpatory hearsay statement by the same declarant, is so fundamentally unfair as to be an abuse of discretion and a denial of due process.' " *State v. DuMars*, 33 Kan. App. 2d 735, 739, 108 P.3d 448, *rev. denied* 280 Kan. 986 (2005)

(quoting *State v. Brickhouse*, 20 Kan. App. 2d at 503). In such cases,

" '[t]he question of whether the exculpatory [hearsay] statement is reliable is overriden by the inherent unfairness that will occur if that statement is excluded while [an incriminating] hearsay statement . . . is admitted.' " *DuMars*, 33 Kan. App. 2d at 739.

*Discussion and Analysis*

Before discussing the defendant's arguments and the case law resolving this issue, we note that under time-honored rules of evidence, the defendant's exculpatory hearsay statements to Detective Randall were inadmissible. A criminal defendant is present at trial and has an absolute right to testify in his or her own behalf. Therefore, the defendant in this case could have taken the stand and testified about what he told Detective Randall. However, the defendant elected not to testify. In spite of this decision, the defendant now claims that the court erred by excluding *the detective's testimony* regarding the defendant's exculpatory hearsay statements.

The inculpatory statements admitted by the trial court that form the basis of the defendant's claim—statements that he made to his acquaintances that he committed the murder—were clearly admissible as party admissions under traditional rules of evidence. See K.S.A. 2006 Supp. 60-460(g). The defendant was present and could have taken the stand to deny he made such statements or to attempt to show that the statements were not true for whatever reason. However, the defendant elected not to testify. The question must be asked: "What, according to the law, makes this situation constitutionally unfair?" We have been unable to find any case to support the defendant's claim under the facts of this case.

Nevertheless, an apt answer to the above question is found in an opinion by the Court of Appeals for the Seventh Circuit in *Gacy v. Welborn*, 994 F.2d 305 (7th Cir.), *cert. denied* 510 U.S. 899, *reh. denied* 510 U.S. 1006 (1993), which involved a similar argument to that raised by the defendant in this case. Gacy filed a petition for federal habeas corpus relief from his murder conviction. In the underlying trial, Gacy did not testify but instead pre-

sented his insanity defense through the testimony of six expert witnesses. The court ruled that these witnesses could not relay Gacy's statements to them verbatim because such statements were inadmissible hearsay; however, the judge did allow the expert witnesses to "recount the substance of what Gacy had said." 994 F.2d at 315. In addition, the court allowed the prosecutor to question these witnesses about Gacy's incriminating statements and admitted such statements as admissions of a party opponent.

On appeal, Judge Easterbrook recognized that "the prosecutor used the hearsay objections to prevent Gacy from getting the more favorable portions of his story before the jury indirectly." 994 F.2d at 315. Nevertheless, the appellate court found no error in the trial court's exclusion of Gacy's statements. As the court explained:

"Beyond explicit rules such as the privilege against self-incrimination and the confrontation clause, none of which applies here, the Constitution has little to say about rules of evidence. *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). The hearsay rule and its exception for admissions of a party opponent are venerable doctrines; no serious constitutional challenge can be raised to them.

"A challenge would lie if a state used its evidentiary rules to blot out a substantial defense. See *Chambers v. Mississippi*, 410 U.S. 284, 298-303, 93 S. Ct. 1038, 1047-50, 35 L. Ed. 2d 297 (1973); *Green v. Georgia*, 442 U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979). These cases hold that states must permit defendants to introduce reliable third-party confessions when direct evidence is unavailable. *No court has extended them to require a state to admit defendants' own out of court words. A defendant is available to himself as a witness. Nothing in the Constitution gives an accused the privilege of proffering, through hearsay, his self-serving statements while denying the state access to the rest of the story that could be got at by cross-examination.*" (Emphasis added.) 994 F.2d at 316.

A similar result was reached by the Illinois Court of Appeals in *People v. Barnwell*, 285 Ill. App. 3d 981, 675 N.E.2d 148 (1996). In that case, Barnwell was convicted of aggravated criminal sexual assault, kidnapping, and robbery. On appeal, Barnwell argued that the trial court erred by excluding police reports that contained exculpatory statements made by the defendant to the police at the time of the arrest. Barnwell claimed that the failure to admit the reports containing these statements violated his constitutional rights under *Chambers* because the introduction of his statements

was critical to his defense. The appellate court disagreed and upheld the trial court's exclusion of the statements, reasoning:

"Under *Chambers*, a state's hearsay rule may under proper circumstances be required to yield to the right of a defendant to defend himself when the hearsay is critical to the presentation of his defense. [Citations omitted.] *However, a hearsay statement is neither critical nor even necessary to a defendant's defense where the defendant is the declarant of the statement and is available to testify in his own behalf.* Under such circumstances, the statement is properly excluded under the prevalent hearsay rules. [Citation omitted.] Moreover, under *Chambers*, in addition to being critical, the hearsay must also be reliable. [Citations omitted.] Here, where the defendant himself is the declarant, it is difficult to conceive how his unverified, uncross-examined, self-serving statements to the police could meet the test of reliability which *Chambers* clearly requires. [Citation omitted.] Therefore, defendant cannot hope to use his statements to the police in place of becoming an in-court witness on his own behalf." (Emphasis added.) 285 Ill. App. 3d at 990.

In *Chambers*, 410 U.S. at 302, the United States Supreme Court explained that state hearsay rules, even when constitutionally valid in and of themselves, "may not be applied mechanistically to defeat the ends of justice." There, a third party had orally confessed to three people that he had committed the murder for which the defendant was charged. At trial, the court excluded evidence of these previous "confessions" under Mississippi's hearsay rule; the court also held that the defendant could not cross-examine the third party (whom the State did not call as a witness) under the rationale that a party may not impeach his or her own witnesses. The United States Supreme Court held that the combination of these two rules deprived the defendant of his constitutional right to a fair trial. 410 U.S. at 302-03.

This court applied the *Chambers* rationale in *Hills*, 264 Kan. 437. Hills was convicted of possession of cocaine, possession of drug paraphernalia, and transporting an open container. Hills' initial interview with the police at the time of his arrest was videotaped and contained both inculpatory and exculpatory statements. At trial, the State called the police officer who interrogated the defendant at the time of his arrest to testify as to the defendant's inculpatory statements. On cross-examination, Hills' defense counsel questioned the interrogating officer regarding Hills' exculpatory state-

ments. The State objected on the basis that it was inadmissible hearsay and beyond the scope of direct examination. The trial court sustained the objection and excluded evidence of Hills' exculpatory statements, ruling that because the exculpatory statements were "self-serving" hearsay they could not be admitted unless Hills testified. 264 Kan. at 442-43.

The Court of Appeals reversed in *State v. Hills*, 24 Kan. App. 2d 1, 7, 941 P.2d 404 (1997), and this court affirmed. *State v. Hills*, 264 Kan. 437, 443-48, 957 P.2d 496 (1998). We concluded:

> "It is simply not permissible to admit an incriminating hearsay statement by the defendant while denying the admission of exculpatory portions of the same hearsay statement through the use of the hearsay rule. Where the State has introduced portions of the defendant's statement which are incriminating, the defendant is allowed to introduce exculpatory portions of his or her statement, even though the defendant does not intend to testify and such evidence is barred by the hearsay rule." 264 Kan. at 448.

In reaching this conclusion, we relied on this court's previous opinion in *Reed*, 213 Kan. 557, 561, 516 P.2d 913 (1973), and on the Kansas Court of Appeals' opinion in *Brickhouse*, 20 Kan. App. 2d 495. In *Reed*, the trial court allowed a witness for the State to testify concerning a conversation she had with the defendant, but the court refused to permit the defendant to introduce other evidence of the same conversation that supported his theory of the defense. The *Reed* court held that this selective admission of evidence regarding the conversation was a reversible error, reasoning that "[w]hen a witness testifies to some part of an oral conversation with the defendant, the defendant may introduce evidence showing his version of the conversation." 213 Kan. at 561.

In *Brickhouse*, the defendant was convicted of the distribution of marijuana, possession of methamphetamine, and possession of marijuana. On appeal, Brickhouse argued that the admission of hearsay statements by Cardello, the other person involved in the drug transaction that gave rise to Brickhouse's convictions, violated his constitutional rights. Cardello made several conflicting statements to the police during the course of the investigation regarding Brickhouse's involvement in the subject drug sale. Some of these statements implicated Brickhouse in the sale, while others tended

to exonerate him. Cardello refused to testify at Brickhouse's trial, invoking his right against self-incrimination under the Fifth Amendment to the United States Constitution. Though all of Cardello's statements to the police were offered for admission into evidence at trial, the court admitted Cardello's inculpatory hearsay statements against Brickhouse but excluded the exculpatory statements.

The Court of Appeals reversed, finding the trial court's selective admission of Cardello's statements to the police to be an "uneven application of the hearsay rule" and therefore "an abuse of discretion." 20 Kan. App. 2d at 502. In particular, the *Brickhouse* court noted that "admitting hearsay evidence from an absent witness that is incriminating while denying admission of hearsay evidence from that same witness which is exculpatory is so unfair as to amount to a denial of due process." 20 Kan. App. 2d at 500. The court held that such an error was reversible because "the testimony was directly exculpatory, was not available through the testimony of other witnesses, and was contrary to an admitted incriminating statement by the same witness." 20 Kan. App. 2d at 502.

This rule regarding the even-handed application of hearsay rules has been applied not only to the defendant in criminal proceedings, but also to the State. See *State v. Johnson*, 258 Kan. 475, 482, 905 P.2d 94 (1995) (finding that "[o]nce the defendant addressed the telephone conversation and the note . . . during cross-examination, the State was entitled to rehabilitate McGill by introducing details of the conversation and note").

We have clarified our holding in *Hills*, noting that it does not lead to a conclusion that a court must admit any exculpatory statement, even if hearsay, so that a defendant may present his or her defense. *State v. Humphery*, 267 Kan. 45, 56, 978 P.2d 264 (1999) (finding that *Hills* "does not support the conclusion that the trial court's rulings regarding the admission of hearsay evidence [from an anonymous TIPS call] were erroneous in the present case"). Instead, courts generally have limited the holding of *Hills* to its facts—that the trial court erred when it excluded exculpatory hearsay statements made by the defendant in an interview but admitted incriminating portions of the same interview. See *Humphery*, 267

Kan. at 56; *State v. Mercer*, 33 Kan. App. 2d 308, 313, 101 P.3d 732 (2004), *rev. denied* 279 Kan. 1009 (2005); *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 445, 8 P.3d 3 (1999), *rev. denied* 269 Kan. 939 (2000). This reading is wholly in keeping with the Court of Appeals' decision in *Brickhouse*, where the court held that it was error to admit only the incriminating statements made by a witness to the police when the witness also made exculpatory statements to the police. See *Brickhouse*, 20 Kan. App. 2d at 498-502.

Contrary to the defendant's contention, neither *Chambers* nor the Kansas appellate court decisions in *Hills* and *Brickhouse* support his contention of unconstitutional unfairness. The two conflicting statements in this case were made in different contexts to different people at different times. Moreover, the State did not attempt to offer any evidence relating to Detective Randall's interrogation of the defendant. Rather, defense counsel attempted to elicit the only testimony regarding this interview during the detective's cross-examination. The evidence therefore was not presented to impeach any testimony by the detective relating to the conversation but, instead, was as an attempt to offer the exculpatory hearsay statements by the defendant into evidence without allowing the State an opportunity to cross-examine the defendant with regard to those statements. As noted in *Barnwell*, a defendant's "unverified, uncross-examined, self-serving statements to the police" are inadmissible. 285 Ill. App. 3d at 990.

As indicated above, we have held that in some instances a court may (and sometimes must) allow a defendant's exculpatory statements by way of another witness' testimony over a valid hearsay objection when the State introduces incriminating statements of the defendant made in the same conversation. See *Hills*, 264 Kan. at 448. Under such circumstances, it would be unfair to permit what might be considered a distortion of the whole truth of a statement or conversation, and a trial court should therefore act to eliminate such unfairness. These circumstances simply did not exist in this case, and the trial court did not err in sustaining the State's objection and excluding evidence of defendant's exculpatory statements made during his interrogation by Detective Randall.

The defendant also argues that the trial court should have allowed evidence of his exculpatory hearsay statements under K.S.A. 60-462, which deals with a hearsay declarant's credibility. This statute provides:

"Evidence of a statement or other conduct by a declarant inconsistent with a statement received in evidence under an exception to K.S.A. 60-460, is admissible for the purpose of discrediting the declarant, though he or she had no opportunity to deny .or explain such inconsistent statement. Any other evidence tending to impair or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness."

The defendant argues that once the prosecution presented testimony of his alleged confessions to his acquaintances, the defense could then admit his statements to Detective Randall to support his credibility under K.S.A. 60-462. However, this argument by the defendant misconstrues the scope of the statute and the types of statements or other evidence that may be admitted thereunder.

K.S.A. 60-462 allows a party to impeach a declarant's out-of-court statement by offering evidence of a prior inconsistent statement by the declarant. See *State v. Watie, Heard and Heard*, 223 Kan. 337, 345, 574 P.2d 1368 (1978). The second clause in the statute provides that evidence relating to the declarant's credibility should be treated the same way and should be assessed under the same rules as if the declarant had been a witness. Contrary to the defendant's assertions in this case, he did not attempt to offer his exculpatory statements to Detective Randall for the purpose of "supporting his credibility." Instead, the defendant clearly attempted to offer evidence of those statements for the truth of the matter stated—that he did not know anything about the murder.

It is equally apparent that the defendant did not seek to have his exculpatory statements admitted for the purpose of "discrediting the declarant." The defendant *was* the declarant, and it was clearly his hope that if his statements to Detective Randall were admitted, the jury would find these exculpatory statements credible. Likewise, he could not have offered evidence of the statements to bolster the credibility of his statements to the other witnesses, which were quite incriminating. Instead, the defendant attempted to offer his exculpatory statements in order to counter the impact

of incriminating statements made by other witnesses at trial. K.S.A. 60-462 is inapplicable. The trial court did not err when it sustained the State's objection and excluded the exculpatory statements made by the defendant to Detective Randall.

(2) *The admission of preliminary hearing testimony at trial of an unavailable witness*

The defendant next contends that his constitutional right to confront witnesses against him was violated when the trial court admitted into evidence the written statement and preliminary hearing testimony of Eugene Greene, an acquaintance of the defendant, who did not testify at the trial. Greene's written statement was admitted into evidence at the preliminary hearing and was the subject of his testimony there. The defendant was present at the preliminary hearing and was represented by counsel, who cross-examined Greene at that time regarding his written statement. Nevertheless, the defendant argues that his prior opportunity to cross-examine Greene was not constitutionally adequate in light of certain evidence that only became known to the defense at trial. A review of the trial record and specifically the transcript of the preliminary hearing testimony and cross-examination of Greene, as well as Kansas and federal constitutional law, demonstrates that no violation of the defendant's confrontation rights occurred in this case.

*Standard of Review*

This court's review of the defendant's claim that his confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated is undertaken without deference to the trial court's interpretation of the law. See *State v. Bailey*, 263 Kan. 685, 697, 952 P.2d 1289 (1998).

The Confrontation Clause of the United States Constitution is only implicated when a hearsay statement is "testimonial." See *Davis v. Washington*, 547 U.S. 813, 821, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). Though the United States Supreme Court has not

provided a "comprehensive definition" of testimonial evidence, the Court did state in *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), that "[w]hatever else the term covers, it applies at a minimum to *prior testimony at a preliminary hearing*, before a grand jury, or at a formal trial; *and to police interrogations*." (Emphasis added.) *Crawford* held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: *unavailability and a prior opportunity for cross-examination*." (Emphasis added.) 541 U.S. at 68.

*Discussion and Analysis*

Both parties agree that the trial court's determination of unavailability was correct. We have reviewed this determination and find no abuse of discretion. *See State v. Young*, 277 Kan. 588, 597, 87 P.3d 308 (2004). Both parties acknowledge that Greene's preliminary hearing testimony and his previous written statement were clearly testimonial.

Notwithstanding his opportunity to cross-examine Greene during the preliminary hearing, the defendant argues that he became aware at trial that Greene was "close" with Steve Bell and Terence Wilkins, and had he known this at the time of the preliminary hearing, he would have asked Greene whether he learned of the information contained in his written statement from the defendant or from one of these other witnesses. The defendant also argues that he learned at trial that Greene had a criminal record, since he was on parole and on probation. Had he been aware of Greene's criminal record, he would have inquired at the preliminary hearing whether Greene had committed any crimes of dishonesty or had agreed to testify in exchange for his release from jail. Thus, he concludes his prior cross-examination of Greene was constitutionally inadequate.

Previous Kansas cases have held that the admission of a witness' preliminary hearing testimony from the same case does not violate a defendant's constitutional rights under the Confrontation Clause if the court finds that the witness is otherwise unavailable to testify. This conclusion was reiterated most recently by this court in *Young*,

277 Kan. at 598, decided shortly after the United States Supreme Court released its decision in *Crawford.*

In *Young*, the defendant appealed from his convictions of first-degree murder and aggravated battery. Young claimed in part that his rights under the Confrontation Clause were violated because the trial court admitted tape of the preliminary hearing testimony of Rodney Hickman, a witness for the State, who had disappeared during Young's trial despite being subpoenaed to testify. After listening to testimony by the investigator who had attempted to locate Hickman, the trial court determined that he was unavailable and allowed the State to play the tape recording of his prior testimony.

On appeal, we concluded that the trial court did not err in admitting the prior preliminary hearing testimony. 277 Kan. at 597-99. After finding that the lower court did not abuse its discretion in finding Hickman unavailable, the court reasoned with regard to the issue of cross-examination that " '[t]he Sixth Amendment right of confrontation is satisfied if the accused confronted the witnesses against him at any stage of the proceedings in the same case and has had an opportunity of cross-examination.' " 277 Kan. at 598 (quoting *State v. McCray*, 267 Kan. 339, 353, 979 P.2d 134 [1999], and generally citing *Crawford*, 541 U.S. 36). The *Young* court thus found that the defendant's confrontation rights had not been violated:

"Young was represented by counsel at his preliminary hearing and had an opportunity to cross-examine Hickman. Although Young claims that Hickman's statements at the preliminary hearing were inconsistent with statements Hickman made at the crime scene, 'any inconsistency could have been addressed on cross-examination during the preliminary hearing. Young's counsel need not have waited until trial. Young's inability to cross-examine Hickman a second time does not equate to a Confrontation Clause violation." 277 Kan. at 599.

This court's decision in *Young* is fully consistent with our prior opinions concerning the admission of preliminary hearing testimony. See *State v. Ruebke*, 240 Kan. 493, 517-18, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987) (finding that the admission of the transcript of an unavailable witness' preliminary hearing testimony did not violate the defendant's confrontation rights under the United States Constitution or the Kansas Constitution Bill of

Rights); *State v. Lashley*, 233 Kan. 620, 627-28, 664 P.2d 1358 (1983) (holding that the trial court did not err in admitting preliminary hearing testimony of a witness in the same proceeding when the witness was unavailable at trial and the defendant had the opportunity to cross-examine the witness); *State v. Mick*, 229 Kan. 157, 161, 621 P.2d 1006 (1981) (finding that "[t]he right of the accused to be confronted by his accusers was honored" when "[t]he testimony was given at the preliminary hearing and the defendant at that time was represented by an attorney who availed himself of the opportunity to cross-examine the witness"); *State v. Terry*, 202 Kan. 599, 601, 451 P.2d 211 (1969) (explaining that "an exception to the confrontation requirement [is that] where a witness is unavailable and has given testimony at a previous judicial proceeding against the same defendant which was subject to cross-examination by that defendant—the testimony of such witness, may, upon a proper showing and foundation—be introduced at the subsequent proceeding").

This principle is also codified in K.S.A. 2006 Supp. 60-460(c)(2)(B), which provides for the admission of "testimony given as a witness in . . . a preliminary hearing or former trial in the same action" when the witness is unavailable and "the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered," as long as it does not "den[y] to the accused the right to meet the witness face to face."

In this case, the defendant had the opportunity to cross-examine Greene at the preliminary hearing and availed himself of that opportunity. He was present at the hearing to confront Greene. Under Kansas law, this opportunity satisfied defendant's confrontation rights under the Sixth Amendment and the Kansas Constitution Bill of Rights, § 10. His "inability to cross-examine [Greene] a second time does not equate to a Confrontation Clause violation." See *Young*, 277 Kan. at 599.

In support of this argument that the allegedly new developments after the preliminary hearing rendered his first opportunity for cross-examination inadequate, the defendant cites two out-of-state

cases: *People v. Osio*, 2005 WL 1231402 (Cal. App. 2005), unpublished opinion filed May 25, 2005, and *People v. Fry*, 92 P.3d 970 (Colo. 2004). However, neither of these cases supports his position.

*Osio*, an unpublished opinion of the California appellate courts, involved a question of whether the introduction into evidence of an audiotape and a transcript of the victim's interview with police officers violated the defendant's rights under the Confrontation Clause. While the defendant had the opportunity to cross-examine the victim at the preliminary hearing, the "victim's statement to the police was not introduced in the prior proceeding when she testified." 2005 WL 1231402, at *7. Thus, the defendant did not have the opportunity to cross-examine the victim with respect to that particular statement. Under these circumstances, the California court held that the admission of the audiotape and transcript of the police interview violated the defendant's confrontation rights. 2005 WL 1231402, at *8.

*Osio* thus concerned the admissibility of the audiotape and transcript from the police's interview of the victim and concluded that the evidence was inadmissible at trial because there had been no discussion of that evidence during the preliminary hearing. Unlike the circumstances in *Osio*, Greene's prior written statement in this case was the *focus* of his preliminary hearing testimony; Greene read his statement as part of his testimony, and the defendant cross-examined Greene on the content of the statement as well as the context in which it was made. *Osio* provides no support for the defendant in the case presently before us.

Likewise, the Colorado Supreme Court's opinion in *Fry* provides no support for the defendant's claim. While *Fry* did hold that a defendant's opportunity to cross-examine a witness during a preliminary hearing was not constitutionally adequate for Confrontation Clause purposes, this holding was demanded by case precedent within that state and by "the limited nature of the preliminary hearing" in Colorado. 92 P.3d at 976-77. The *Fry* court explained that because a preliminary hearing within that state is "limited to matters necessary to a determination of probable cause," and a defendant may not cross-examine witnesses as to other matters, cross-examination during a preliminary hearing does not satisfy the

defendant's confrontation rights at trial. *Fry*, 92 P.3d at 977. While the *Fry* court recognized that other states have decided this issue differently, the court opted not to "expand the scope of the preliminary hearings in order to allow them to satisfy Confrontation Clause requirements" and therefore "merely reiterate[d] [its prior precedent]." 92 P.3d at 978.

The Colorado court's decision in *Fry* is extremely state-law specific, focusing on the particularities of preliminary hearings in Colorado. The application of its reasoning to the instant case is therefore limited. In Kansas, a criminal defendant is not barred from cross-examining witnesses in a preliminary hearing regarding the witness' credibility. *Cf.* K.S.A. 22-3213. More importantly, this court has specifically held on numerous occasions that the requirements of the Confrontation Clause are satisfied when a defendant has cross-examined an unavailable witness at the time of the preliminary hearing.

In addition, contrary to the defendant's argument, this court has not indicated that a defendant must have the opportunity to cross-examine a witness as to every allegation that may arise during the course of a trial in order to protect his constitutional rights under the Confrontation Clause. Previous Kansas cases recognize that there may be details at trial that have not been the subject of cross-examination in prior proceedings. As this court explained in *Terry*, "[t]his exception [of admitting preliminary hearing testimony] has been explained as arising from practical necessity and justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." 202 Kan. 599, Syl. ¶ 3.

The defendant mistakenly reads the language of K.S.A. 2006 Supp. 60-460(c) broadly to provide that his prior opportunity to cross-examine Greene did not satisfy the Confrontation Clause, as the "interest and motive" of the defendant in cross-examining Greene was altered at trial. However, K.S.A. 2006 Supp. 60-460(c)(2)(B) merely requires that "the issue [which is the subject of cross-examination at the preliminary hearing] is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive *similar* to that

which the adverse party has in the action in which the testimony is offered." (Emphasis added.) The defendant's interest and motive in questioning Greene at the preliminary hearing and at his trial *were* similar—to prove his innocence by discrediting Greene's written statement to the police.

Finally, as a factual matter, review of the preliminary hearing transcript indicates that the defendant was aware of the issues now raised (Greene's relationship with Bell and Wilkins, Greene's criminal history, and possible promises of leniency to Greene by the police in exchange for his statement) at the time of the preliminary hearing and cross-examined Greene concerning those issues. The trial court did not err by admitting Greene's written statement into evidence and by allowing Greene's preliminary hearing testimony to be read at trial.

(3) *The lack of a cautionary instruction concerning informants' testimony*

Although the defendant did not request such an instruction at trial, he now claims that the trial court committed clear error when it failed to provide the jury with a cautionary instruction on informant testimony regarding the testimony of "four informants [who] gave statements or testified in return for benefits." The defendant never explains who these "four informants" are, but the State approaches this argument under the assumption that he is referring to the testimony of DaMario Brooks, Steve Bell, Terence Wilkins, and Eugene Greene. It appears from the context of the defendant's contentions that this is an accurate assumption.

*Standard of Review*

" 'It is well established that this court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omission.*' [Citation omitted.]" *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). "An instruction is clearly erroneous when a reviewing court reaches a firm conviction that, if the trial error had not occurred, there is a real possibility that the jury would have returned a different verdict. [Citation

omitted.]" *State v. Novotny*, 252 Kan. 753, 755, 851 P.2d 365 (1993).

*Discussion and Analysis*

The defendant claims on appeal that "the four government informants were well compensated for testimony by sentence reduction or release." His statement is not supported in the record, for Bell, Brooks, and Wilkins all testified at trial that they were not promised anything in exchange for their testimony. It is doubtful whether the defendant would have been entitled to an informant· instruction on these three individuals had he requested one. The trial court did provide the jury with an accomplice instruction on Bell since he was present with the defendant and provided the defendant with the gun used to kill Hayes. However, Greene testified at the defendant's preliminary hearing that he provided the police with his written statement and agreed to testimony against the defendant in exchange for receiving probation rather than imprisonment on unrelated charges he was then facing.

In *Novotny*, the defendant acknowledged that he did not request a cautionary instruction relating to informant testimony but nevertheless argued that the failure to provide such an instruction was reversible error. One of the witnesses at Novotny's trial was used as an undercover agent to catch the defendant in a drug sale; the witness had received roughly $3,000 for his services to the police at the time he testified at trial. Despite these facts, this court held that the failure to provide the instruction did not necessarily constitute clear error:

"We conclude that ordinarily it is error to refuse to give a cautionary instruction on the testimony of a paid informant or agent where such testimony is substantially uncorroborated and is the main basis for [a] defendant's conviction. *Where, however, no such instruction is requested nor objection made to the court's instructions, and such testimony is substantially corroborated, the absence of a cautionary instruction is not error and is not grounds for reversal of the conviction.*" (Emphasis added.) 252 Kan. at 760.

Because the testimony of the alleged informant in *Novotny* was substantially corroborated by other evidence at trial, this court held

that the trial court did not err in failing to provide the instruction. 252 Kan. at 759-60.

In *State v. Brinkley*, 256 Kan. 808, 888 P.2d 819 (1995), this court again considered whether a trial court had erred in failing to provide an informant instruction where no such instruction was requested at trial. In that case, the defendant's counsel requested a " 'jail informant' " instruction at trial but did not provide any such instruction and could not locate such an instruction in the PIK Crim 3d. On appeal, Brinkley argued that he had requested the paid informant exception, PIK Crim. 3d 52.18-A. This court found that Brinkley had never requested the paid informant instruction before his appeal and, thus, analyzed his claim as if no request had been made at trial. 256 Kan. at 817.

In analyzing whether the failure to provide the paid informant instruction constituted error, the court first noted that two of the three witnesses who Brinkley argued were informants received no benefits for their testimony at trial. The other witness did receive immunity from prosecution for the murder for which Brinkley was charged, but the trial court provided an accomplice instruction with regard to this witness. This court ultimately held that the failure to provide the paid informant instruction was not clearly erroneous because

"(1) no paid informant instruction was requested, (2) Montgomery's benefit for testifying was placed before the jury and was emphasized by Brinkley in cross-examination and in closing argument, (3) the record does not establish that Wiggins and Watson were paid informants, and (4) there was substantial evidence introduced to corroborate Montgomery's story." 256 Kan. at 818.

See also *State v. Reed*, 256 Kan. 547, 559, 886 P.2d 854 (1994) (finding no error in the failure to provide an accomplice instruction when the alleged accomplice's testimony "was neither wholly uncorroborated nor the sole basis for the defendant's conviction" and where circumstantial evidence also pointed to the defendant as the killer).

In the case before us, Greene did testify that he provided his written statement and testimony in exchange for probation rather than imprisonment on the state charges he was facing at the time. The defendant questioned him extensively on this subject during

cross-examination at the preliminary hearing. In *Brinkley*, this court found that an opportunity to cross-examine a witness regarding his or her reasons for testifying mitigated the failure to provide an informant instruction. See 256 Kan. at 818. Moreover, the trial court in this case did provide the general instruction regarding witness credibility, which this court found to be a mitigating factor in *Novotny*. See 252 Kan. at 759-60.

Of the "four informants" whose testimony the defendant claims required a cautionary instruction, three testified that they did not receive anything in exchange for their testimony (and the trial court provided an accomplice instruction with regard to Bell). The remaining "informant," Greene, received probation instead of imprisonment in unrelated charges in exchange for providing a written statement to the police as to statements made to him by the defendant; however, the defendant cross-examined him on that subject during the preliminary hearing. This case is therefore noticeably different from *Novotny*, where the informant participated in apprehending the defendant and was paid money for his services. Yet even in that case, we found that the failure to provide the informant instruction was not error in the absence of a request for the instruction at trial. See 252 Kan. at 759-60.

Finally, contrary to the defendant's assertions, the testimony of all four of these witnesses was substantially corroborated by the other evidence at trial. The defendant's handprint was found on Hayes' car; his DNA was found on a hat left at the scene of the murder. Neighbors testified that they saw two men fighting in front of Hayes' house and heard gunshots. Three children testified that they overheard a struggle and a loud noise that sounded like a gunshot when they called the defendant's cell phone. All of this evidence corroborated the testimony of the "informant" witnesses. Under such circumstances, and where no request for an informant instruction was provided at trial, the court did not commit clear error by failing to provide the instruction of its own accord.

### (4) Prosecutorial misconduct during closing argument

The defendant claims that the prosecutor committed intentional misconduct during his closing argument by arguing "victim-im-

pact" statements and by misstating facts. The defendant did not object at any time to the prosecutor's statements; however, when a defendant's claim for prosecutorial misconduct implicates his or her right to a fair trial, this court reviews the alleged misconduct the same regardless of whether an objection was made. *State v. Swinney*, 280 Kan. 768, 779, 127 P.3d 261 (2006).

*Standard of Review*

Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, an appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *Sweeney*, 280 Kan. at 779. In the second step of this two-step analysis, the appellate court considers three factors:

"(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence is of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors, unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman* [*v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial)] have been met. [Citations omitted.]" 280 Kan. at 780.

*Discussion and Analysis*

*Victim-Impact Statements*

The defendant first argues that the prosecutor committed reversible misconduct by emphasizing the grief caused to Hayes' wife by the murder. At the beginning of closing argument, the prosecutor stated:

"To one person in this courtroom, the value of Duane Hayes life was everything. To Tanya Hayes, Duane was a friend, a companion, husband, father of their children, his life was worth everything. To another person in this courtroom, Duane Hayes was a smoker, a crack cocaine user, and to Vaccaro Stano, the value of Duane Hayes life was the value of a rock of crack cocaine and the use of a car."

In addition, the prosecutor finished closing argument by saying that "to Tanya Hayes, Duane was everything. The time has come, we need to ask you to tell Vaccaro Stano that she's right." The defendant argues that these two references to the victim's wife were improper and require reversal.

This court has held in the past that allowing irrelevant evidence regarding the impact of a crime on a victim or a victim's family may constitute reversible error. See *State v. Donesay*, 265 Kan. 60, 85, 959 P.2d 862 (1998). In *Donesay*, a murder victim's widow testified in detail regarding her relationship with her husband and her husband's friendly disposition. This court held that the admission of this testimony was irrelevant as to the crime charged and constituted reversible error. 265 Kan. at 85-88; see also *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004) (finding that the prosecutor's statements that the jury should convict the defendant in order to protect his daughter was one of the bases for reversible prosecutorial misconduct); *State v. Henry*, 273 Kan. 608, 641, 44 P.3d 466 (2002) (holding that the prosecutor's reference to the victim's mother's grief and introduction of the mother's testimony were designed to inflame the passions of the jury and denied the defendant a fair trial).

Unlike in *Donesay* and *Henry*, the prosecutor in this case only made reference to Tanya Hayes' feelings twice during closing argument. Tanya was called to testify, but her testimony was relevant in that it described how she found her husband, as well as the events leading up to his death. It appears that the prosecutor was merely using the two statements during closing argument as a rhetorical reference.

Nevertheless, we have held that it is error to admit irrelevant evidence of the impact of a crime on a victim. We conclude that the prosecutor's two isolated statements were outside the wide latitude allowed. However, given the fact that there were only two passing references made to Tanya Hayes' grief and that these were not emphasized, we further conclude that the prosecutor's conduct was neither gross and flagrant nor demonstrated any ill will. Moreover, there was ample evidence before the jury to support the defendant's conviction. Thus, the prosecutor's statements during

closing argument regarding Tanya Hayes, while misconduct in a pure sense, did not constitute reversible error.

*Misstating Evidence*

The defendant also argues that the prosecutor committed reversible misconduct during closing argument by misstating the evidence against him. "The fundamental rule for closing arguments is that the prosecutor must confine his or her remarks to matters in evidence. It is clearly improper for the prosecutor to state facts that are not in evidence. [Citation omitted.]" *State v. Ly*, 277 Kan. 386, 393, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004). The defendant asserts that the prosecutor misstated four pieces of evidence in the trial: (1) incorrectly stating that one of the eyewitnesses—Kelli Stitch, a neighbor—testified that she saw the defendant wipe down Hayes' car; (2) misconstruing the relationship that Wilkins, Brooks, and Greene had with the defendant; (3) mischaracterizing the testimony of the kids concerning the cell phone call to the defendant; and (4) inaccurately describing the DNA evidence from the baseball cap found at the crime scene.

Stitch testified at trial that on the night of Hayes' murder and after she heard gunshots, she saw someone run around Hayes' car, try the driver's door, run back to the other car, and get in before the car drove off. During closing argument, the prosecutor argued that "[w]e know somebody gets out of that car, by Kelli Stitch, runs around and tries to get into the Hayes car, or are they wiping the Hayes car down, or both?" The prosecutor later said, with regard to the testimony of Brooks and Greene, "How would they know that Kelli Stitch would see someone come running around to either get in and/or wipe down the car?" The prosecutor also mentioned wiping down the car in the context of discussing Wilkins' testimony. The defendant argues that by misstating Stitch's testimony, the prosecutor led the jury to believe that the witness' testimony corroborated that of Brooks, Greene, and Wilkins, when in fact, Stitch's testimony contradicted the men's statements.

While a prosecutor may not misstate the facts in evidence, a prosecutor is permitted to draw reasonable inferences from the evidence and is given latitude in drawing those inferences. See

*State v. Castillo,* 34 Kan. App. 2d 169, 175, 115 P.3d 787, *rev. denied* 280 Kan. 985 (2005). It was not unreasonable for the prosecutor to argue during closing argument that what Stitch really saw when she thought she saw someone running back and forth around Hayes car trying to open the door was someone wiping down the car for fingerprints. We conclude that the prosecutor's comment did not fall outside the bounds allowed a prosecutor when arguing a case.

Next, the defendant contends that the prosecutor improperly emphasized the connection that Brooks, Greene, and Wilkins had with the defendant and misconstrued Wilkins' relationship with Duane Hayes. The prosecutor stated that "[a]ll four of these men . . . with the exception of Steven Bell, have no real connection to Duane Hayes," but Brooks, Greene, and Wilkins "testified to being good friends with Vaccaro Stano." The defendant argues that this statement contains two errors: First, the defendant claims that the statement places emphasis on the men's friendship with the defendant when "the real key was the informants['] friendships with Steve Bell." This argument fails; the prosecutor was not required to discuss the men's friendship with Bell, and all three men did testify that they were friends with the defendant. Second, the defendant argues that this statement was incorrect in that Wilkins testified that he had a "pretty friendly" relationship with Hayes. Contrary to the defendant's argument, Wilkins testified that although he knew Hayes and had a friendly relationship with him, the two were not close. Thus, the prosecutor did not misstate facts in evidence in making this statement.

The defendant next argues that the prosecutor "misstated one of the most vital pieces of evidence" when he discussed the testimony regarding the conversation overheard by Berry, Plunkett, and Quarles via the defendant's cell phone. The prosecutor stated during closing argument:

"And the threats were not I want my money. It was I want to get paid. When am I going to get paid? Pay does not always mean money. How about if I can't use your car, when am I going to get my money if you're stiffing me on this car, when am I going to get paid? If I don't get paid, then I'm going to run in your house and kill your kids."

The defendant argues that this is a misstatement of the facts because Plunkett testified that she overheard a conversation between two men regarding when one was going to *get his money* for the dope. Quarles, Plunkett's cousin, also testified that he heard something about killing kids if one of the men didn't get *his money*. According to the defendant, the prosecutor's misstatement of this fact detracted from the fact that a more reasonable reading of the conversation was that it was between Hayes and *Bell*, whom Hayes owed money for drugs.

We agree that the prosecutor misstated the facts concerning the telephone call. However, we do not perceive any ill will on the part of the prosecutor, nor do we conclude that the misstatement was gross or flagrant. This comment was outside the wide latitude given to prosecutors, but harmless in light of the fact that the defendant revealed to three other witnesses that he shot Hayes. The prosecutor's misstatement does not rise to the level of reversible error.

Finally, the defendant argues that the prosecutor erred when he stated in closing argument that there was 10 times as much of the defendant's DNA on the baseball cap than there was of anyone else's DNA. The defendant asserts that the DNA expert witness testified only that there was 10 times as much of his DNA on the swatch of cloth from the hat's bill that the DNA lab had tested. Contrary to the defendant's argument in this regard, the prosecutor's statement was not misconduct; rather, it was a fair construction of the evidence. The prosecutor did not commit reversible error.

The defendant ends his brief with a section entitled "Harmless error," where he essentially reargues all of the facts and states that the jury made the wrong decision. In effect, the defendant raises a sufficiency of evidence argument.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

A review of the record in this case indicates that there was ample evidence supporting the State's case against the defendant. The

defendant was placed at the scene; his handprint was found on the car, and his DNA was on the baseball cap. Witnesses testified that they saw two men struggling outside the Hayes' home. Three children testified that when they called the defendant's cell phone, they overheard the defendant arguing with another man and heard a loud noise that one of the children thought was a gunshot. Several neighbors heard gunshots and saw two men drive away. The defendant told three of his friends that he shot Hayes, and their statements were corroborated by the State's evidence. The evidence admitted provided a basis for a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the crime charged.

Affirmed.