NOT DESIGNATED FOR PUBLICATION

No. 122,485

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REESE ADAM YOUNG,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harper District Court; R. SCOTT MCQUIN, judge. Opinion filed April 30, 2021.
Affirmed in part, reversed in part, and remanded with directions.

*Kurt P. Kerns*, of Kerns Law Group, of Wichita, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

POWELL, J.: Following his 2014 rape conviction, Reese Adam Young filed a K.S.A. 60-1507 motion alleging 22 claims of ineffective assistance of counsel. The district court branded Young's claims as impermissible challenges to his counsel's trial strategy and summarily denied his motion. On appeal, Young claims the district court erred in its findings and argues he is entitled to an evidentiary hearing on his claims. After a review of the record, while we find the majority of Young's claims are either without merit or have been waived, we agree that some of Young's claims cannot be dismissed as mere challenges to counsel's trial strategy because the record does not tell us whether some of counsel's decisions were part of his considered trial strategy. Thus, we

1

affirm in part, reverse in part, and remand with directions for the district court to hold an evidentiary hearing on six of Young's claims.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are taken from Young's direct appeal before another panel of this court:

"One afternoon, Young went to the home of his friends A.W. and C.O. At some point, Young and C.O. were alone together in the basement where C.O. resided. They talked for a while, and then Young stood up, walked over to C.O., and tried to kiss her. C.O. turned away from the kiss. C.O.'s rejection made Young angry, so he grabbed C.O.'s arms and pushed her backward onto her bed. He then got on top of C.O., holding her down. He attempted to kiss her several more times then undid his pants, pulled out his penis, shoved C.O.'s shorts to the side, ripping them in the process, and forced his penis inside of her. While Young was on top of her, C.O. told him to stop, attempted to avoid his kisses, and yelled out several times for help.

"After this violent encounter, Young got up from the bed and fixed his clothes. Young began to walk upstairs but then turned and told C.O. that if she told anyone what had just happened he would hurt her kids or her family. Once Young was upstairs, C.O. heard A.W. yell. C.O. became concerned for A.W.'s safety, so she ran upstairs to check on her.

"When C.O. arrived in A.W.'s room, she found Young on top of A.W. Young appeared to be wrestling A.W., trying to get her keys from her. When she refused to give him her keys Young held A.W. down and attempted to take her shorts off. A.W. attempted to push Young off and yelled for help from C.O. C.O. helped A.W. get Young off her. Young finally stopped and went back down to the basement to look for his cigarettes.

"Approximately 10 minutes later, C.O.'s father, Randy, arrived at the house. At that point, C.O. was crying so hard that she was unable to talk to him. All Randy could

2

get from either woman was that they wanted Young to leave but he would not. Randy went downstairs and told Young to leave. Randy then returned to A.W.'s room and called the police after learning C.O. had been raped.

"Young's version of the events differed significantly from C.O. and A.W. He claimed that while in the basement, C.O. grabbed him by the shirt, pulled him onto the bed on top of her, and started kissing him. According to Young, he and C.O. were in bed engaging in consensual sex for 15 or 20 minutes. When they were finished they remained in bed talking for a few minutes. C.O. then got up, got dressed, and went upstairs.

"According to Young, C.O. returned to the basement, told Young that A.W. was angry with him for spilling his drink in her truck earlier that day, and suggested Young go apologize. The two of them went back upstairs to A.W.'s room. Young asked A.W. for the keys to her truck so that he could go out and clean up his mess. A.W. refused several times, so Young left her room and went back downstairs.

"When Young got downstairs C.O. was crying. Young claimed that C.O. was upset because she believed Young was hitting on A.W. After Young explained that he was not interested in A.W., C.O. went back upstairs. Young remained in the basement to look for his cigarettes. Several minutes later Randy came down the stairs looking for C.O. When Young told him C.O. was upstairs, Randy went upstairs to find her. Randy came back down less than a minute later and asked Young to leave. Young complied.

"Officer Nathan Houston responded to the call from Randy. After learning from Randy that C.O. had been raped, Houston contacted dispatch and asked for back up. Police Chief Doug Murphy arrived soon after to assist Houston with the investigation. Houston, Murphy, and Randy were standing outside on the front porch discussing the assault when Randy saw a truck drive past the house that he identified as Young's. The officers left the house and conducted a traffic stop of the vehicle. After Young was arrested, Houston returned to A.W. and C.O.'s home to attempt to interview the women. Houston was able to interview A.W., but C.O. was still hysterical so he was unable to interview her. At that time, Houston also made arrangements for C.O. to go to a hospital in Wichita for a sexual assault evaluation.

3

"Tina Peck was the SANE/SART nurse who performed the sexual assault examination of C.O. During the examination C.O. was in moderate distress, meaning she was extremely tearful and the examination had to stop several times so that C.O. could collect her composure. At the time of her examination, C.O. complained of physical pain in her lower abdomen and vagina that C.O. ranked as severity level 7 on a scale of 1 to 10. Peck performed a physical examination of C.O. and found multiple lacerations and abrasions around C.O.'s vagina, one of which she described as uncommonly large. She described that lacerations are caused by blunt force. Peck was able to take swabs from C.O.'s vagina and vaginal area to check for the presence of foreign DNA but was unable to perform an internal investigation with a speculum because C.O. was in too much pain. It was later determined through forensic analysis that the vaginal swabs revealed the presence of sperm belonging to Young in C.O.'s vagina.

"Meanwhile, back at the scene, Young remained in Murphy's custody while the two waited for an additional officer to arrive to transport Young to the jail. Murphy read Young his *Miranda* rights. Young said he understood his rights and was willing to go ahead and talk to Murphy at that time. Murphy informed Young of the allegations against him. Young admitted that he had sex with C.O. but contended that the encounter was consensual. Murphy asked Young if he had used a condom. At that point Young requested an attorney, and Murphy ceased his questioning.

"After questioning had ceased, Deputy Sheriff Chad Hacker arrived to transport Young to jail. Young was transferred from Houston's car where he had been waiting with Murphy, to Hacker's truck. On the drive to the jail, Young asked Hacker questions about the charges against him. Young asked: 'who he had raped'; 'how somebody could be raped when there wasn't any penetration'; whether 'it was [A.W.] that said she had been raped'; and, 'how he would be charged with rape when he never had sex with anyone.' During the drive to the jail, Young specifically referenced A.W. but did not discuss C.O.

"Several months later, while Young was in jail awaiting trial, Young's friend allegedly offered C.O. money not to testify, which gave rise to the intimidation of a witness charge.

4

"Prior to trial, at the request of the State, a *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), hearing was held to determine whether Young's statements to Murphy and Hacker were admissible. After a hearing, the trial court determined that Young's statements to both Murphy and Hacker were made knowingly and voluntarily and thus were admissible at trial. At trial, the district court admitted Hacker's testimony regarding the statements Young made to him over the objection of the defense.

"Later in the trial, Young sought leave to call Murphy as a witness to testify about the statements Young made to him after his arrest. The State argued against allowing the testimony, citing *State v. Stano*, 284 Kan. 126, 159 P.3d 931 (2007). The district court agreed that *Stano* controlled and ruled that Murphy could not be called by the defense to testify to Young's exculpatory statements in lieu of his own testimony.

"Young was the only witness called by the defense.

"The jury found Young guilty of rape but acquitted him of the attempted rape of A.W. and aggravated intimidation of a victim. Young filed a timely appeal." *State v. Young*, No. 112,870, 2016 WL 687642, at *1-3 (Kan. App. 2016) (unpublished opinion).

The panel affirmed Young's conviction. 2016 WL 687642, at *11. Young then petitioned for review by our Supreme Court, which the court denied. 306 Kan. 1332 (2017). The mandate was issued on February 6, 2018.

On February 6, 2019, Young filed a timely K.S.A. 60-1507 motion raising 22 claims of ineffective assistance of counsel. The State opposed the motion. After conducting a preliminary hearing and without taking any evidence, the district court summarily denied Young's K.S.A. 60-1507 motion, finding all of Young's claims were examples of trial strategy by his trial counsel.

Young timely appeals.

DID THE DISTRICT COURT ERR IN DENYING

YOUNG'S K.S.A. 60-1507 MOTION WITHOUT AN EVIDENTIARY HEARING?

Young argues his trial counsel was ineffective. Young listed 22 claims in his motion that are discussed in greater detail below, but his arguments largely boil down to allegations that Brown did not conduct any investigation, did not properly examine witnesses, and did not call certain witnesses. Young argues the district court's invocation of "trial strategy" to avoid an evidentiary hearing was erroneous and claims he was prejudiced by trial counsel's ineffectiveness because, but for the 22 instances of ineffectiveness, the jury would not have found him guilty of rape.

The State responds that Young has waived all of his claims except for his assertions that trial counsel failed to investigate, failed to properly cross-examine the SANE nurse, failed to impeach C.O.'s credibility, and failed to call Police Chief Doug Murphy as a witness. The State further argues Young's trial counsel performed his duties competently and made reasonable strategic decisions. Finally, the State argues Young cannot show that any alleged deficiencies of trial counsel's performance prejudiced him.

*Standard of Review*

A district court has three options when addressing a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

Here, the district court held a preliminary hearing, determined there were no substantial issues, and summarily denied the motion without an evidentiary hearing.

"When the district court reviews the motion, files, and records; holds a preliminary hearing; and summarily denies a K.S.A. 60-1507 motion," our review is de novo because "we are in as good a position as the district court to consider the merits." *Hayes v. State*, 307 Kan. 9, 12, 404 P.3d 676 (2017).

*Analysis*

When a prisoner challenges his or her sentence under K.S.A. 2020 Supp. 60-1507, the district court shall hold an evidentiary hearing on the motion's allegations "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2020 Supp. 60-1507(b).

Young alleges his trial counsel was ineffective. The Sixth Amendment to the United States Constitution guarantees the right to assistance of counsel to the accused. The right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Bogguess v. State*, 306 Kan. 574, 583-84, 395 P.3d 447 (2017). A convicted defendant must satisfy two prongs to prove counsel was so defective as to require reversal of a conviction: (1) Defense counsel's performance was deficient under the totality of the circumstances; and (2) the deficient performance prejudiced the defendant and a reasonable probability exists a different result would have occurred absent the deficiency. *Adams*, 311 Kan. at 578; see *Strickland*, 466 U.S. at 687. The deficiency prong requires a defendant show counsel's performance was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. The prejudice prong requires a showing that counsel's errors were so serious they deprived the defendant of a fair trial with a reliable result. The

defendant must satisfy both prongs for a successful ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687.

When a court reviews an ineffective assistance claim, its scrutiny of counsel's performance must be highly deferential, with every effort made to eliminate the distorting effects of hindsight, to reconstruct the circumstances surrounding the challenged conduct, and to evaluate the conduct from counsel's perspective at the time. The court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable, effective representation. *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Counsel's performance is measured by "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.

The movant bears the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing. The movant must make more than conclusory allegations and must state an evidentiary basis in support of the allegations or an evidentiary basis must appear in the record. Once a movant satisfies this burden, the district court must grant a hearing, unless the motion is successive and seeks similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The district court held a preliminary hearing on Young's K.S.A. 60-1507 motion. In its response and at the hearing, the State argued Young's allegations were examples of counsel's trial strategy and the district court should deny the motion without an evidentiary hearing. The district court agreed, stating:

> "And just looking at all of this, it strikes me that, yeah, it does look like these are matters that were trial strategy, and on the face of them they look like pretty sound decisions as to a matter of trial strategy. Even on second guessing they look pretty good. So—and the law says you don't second guess on matters of trial strategy on a 60-1507. Plus, probably most importantly, I just don't see where these complaints lead to any prejudice to the defendant. Sounds like he got a fair trial on this matter. There's no allegations as to how

these instances of conduct by counsel he complained about prejudiced his case. There's speculation, but there's . . . nothing concrete."

Trial counsel has a duty to make a reasonable investigation or make a reasonable decision that makes an investigation unnecessary. In an ineffective assistance case, a decision not to investigate is assessed for reasonableness under the circumstances, applying deference to the counsel's judgments. *State v. Butler*, 307 Kan. 831, 854, 416 P.3d 116 (2018). "An attorney's strategic decisions are essentially not challengeable if the attorney made an informed decision based on a thorough investigation of the facts and the applicable law." *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014).

But the "'"[m]ere invocation of the word 'strategy' does not insulate [defense counsel] from constitutional criticism," especially "when counsel lacks the information to make an informed decision due to inadequacies of [counsel's] investigation."' [Citations omitted.]" *Sola-Morales*, 300 Kan. at 887; see *Butler*, 307 Kan. at 854. As with a defendant's general burden to establish ineffective assistance of counsel, a defendant bears the burden to demonstrate "that trial counsel's alleged deficiencies were not the result of strategy." *Sola-Morales*, 300 Kan. at 888.

Here, the district court found Young's criticisms concerned trial counsel's strategic decisions, and it adopted the State's arguments and authorities in doing so. The record reflects the State went into detail to explain how each of the 22 errors Young complained of were the result of sound trial strategy from his trial counsel. But the district court's findings clash with a lack of evidence in the record to support them.

The trial court's determination that a particular action was the result of trial strategy amounts to a factual finding. *Palmer v. State*, No. 90,104, 2004 WL 556753, at *1 (Kan. App. 2004) (unpublished opinion). Substantial competent evidence must support a district court's factual findings. See *Butler*, 307 Kan. at 853. Here, the record

9

lacks evidence. Perhaps Young's trial counsel made the decisions he did based off a planned trial strategy. Or perhaps trial counsel overlooked several issues and provided Young with ineffective assistance. "Because no evidentiary hearing was held, the trial court cannot be sure that [counsel] made a strategic decision after obtaining facts upon which to base his decision, rather than based on inadequacies in his investigation." *Robey v. State*, No. 98,982, 2008 WL 5401337, at *4 (Kan. App. 2008) (unpublished opinion). With no evidentiary hearing or testimony from Young's trial counsel, we cannot say with certainty that counsel's decisions were trial strategy and not error or neglect.

In *Bellamy v. State*, 285 Kan. 346, 357, 172 P.3d 10 (2007), the district court found Bellamy had received effective assistance of counsel but made no factual findings as the advice Bellamy was given by his counsel. The Kansas Supreme Court ordered the district court to conduct an evidentiary hearing when the defendant's allegations of ineffectiveness included conversations between the defendant and defense counsel. In doing so, the Supreme Court held:  "There are not sufficient facts in the record to establish what advice Bellamy received from his trial counsel prior to entering his guilty plea or how that advice influenced Bellamy's decision to plead guilty." 285 Kan. at 357.

Here, the record does not tell us whether Young's trial counsel conducted a reasonable investigation or any investigation, nor does it show if the 22 errors Young complains of were the result of his trial counsel's strategic decision or his ineffectiveness. Substantial questions of fact remain before a court can determine if Young received effective assistance of counsel.

The district court made a general finding that the 22 errors Young complained of were trial strategy and not ineffective assistance of counsel. The district court did not make specific findings on each claim. While the district court's finding that the errors Young complained of were appropriate trial strategy by his trial counsel and its summary dismissal of Young's K.S.A. 60-1507 motion was erroneous, our inquiry does not end

there. It is appropriate for us to review each of Young's ineffective assistance of counsel claims and determine if any of them conclusively show Young is not entitled to relief because we are "in as good a position as the district court to consider the merits." *Hayes*, 307 Kan. at 12.

1.      *Trial counsel did not call Officer Melanie Miller to testify.*

For his first claim, Young argues that Miller could have testified about her interview with A.W. and C.O. the morning after the incident and shown the inconsistencies in their stories. Nothing in the files or record explains why trial counsel chose not to call Miller. As Young's defense was that the sex was consensual, showing A.W. and C.O.'s stories conflicted from the beginning could have helped his case, and not calling Miller to testify may have been deficient performance.

Even if trial counsel's failure to call Miller was deficient, the motion, files, and records conclusively show Young cannot show he was prejudiced. On cross-examination, trial counsel questioned A.W. and C.O. about the conflicts in their testimony. When C.O.'s testimony conflicted with her preliminary hearing testimony, trial counsel impeached her. Finally, trial counsel's closing argument was dedicated to highlighting the inconsistencies between A.W. and C.O.'s testimony, even telling the jury, "[T]he girls do need to work on getting their stories straight because there are a lot of inconsistencies in this matter." Trial counsel highlighted that A.W. and C.O. differed on (1) what time the horses were fed; (2) when and how many times C.O. went upstairs after the alleged rape; (3) whether the women were drinking that afternoon; (4) whether they stopped to get liquor when driving around; and (5) their seating arrangement in the truck. Trial counsel's strategy apparently paid dividends as the jury found Young not guilty of attempted rape and aggravated intimidation of a victim.

The record conclusively shows Young is not entitled to relief on his first claim.

11

2.    *Trial counsel did not conduct any investigation.*

Next, Young claims his trial counsel did not conduct any investigation after telling Young he would. If it is true that trial counsel did not conduct any investigation or did not have a reasonable basis for not conducting an investigation, his performance was deficient and could have prejudiced Young. But the answer is unknown because no evidence was presented at the preliminary hearing. Without testimony from Young's trial counsel, the facts and record do not conclusively show Young was not entitled to relief. Young is entitled to an evidentiary hearing on his second claim.

3.    *Trial counsel did not ask SANE/SART Nurse Tina Peck if C.O.'s bruises could have come from consensual sex.*

Third, Young claims his trial counsel was ineffective when he refused to ask Peck if C.O.'s blunt force trauma injuries could have resulted from consensual sex. Young also claims that trial counsel should have shown that C.O. could have tampered with her shorts before giving them to Peck. However, Young does not raise the second part of this claim on appeal, resulting in its waiver. See *White v. State*, 308 Kan. 491, 511, 421 P.3d 718 (2018) (issues not briefed deemed waived).

Peck testified C.O.'s injuries were consistent with blunt force trauma and consistent with C.O.'s story but did not render a judgment on whether they could have also come from consensual intercourse. What Peck's answer would have been is unknown. If trial counsel had asked Peck if the injuries were consistent with consensual sex and Peck answered in the affirmative, then such an answer could have helped Young's case. But Peck could have answered in the negative and testified that C.O.'s injuries only could have come from nonconsensual sex. Such an answer would have been devastating for Young's defense. The record is unclear as to why trial counsel did not cross-examine Peck on this topic. Admittedly, playing it safe probably was good trial

12

strategy, but the record does not show whether it was part of trial counsel's strategy not to ask this question because of fear over the answer. Given that a favorable answer could have helped Young's consent defense, we conclude the record fails to conclusively establish Young is not entitled to relief, and Young is entitled to an evidentiary hearing on this claim.

4. *Trial counsel did not raise C.O.'s prior conviction for theft by deception.*

Fourth, Young complains that his trial counsel was ineffective for not raising C.O.'s prior conviction for theft by deception. K.S.A. 60-421 allows evidence of a witness' prior conviction involving dishonesty to impeach that witness' credibility. However, Young did not provide any evidence in his motion to show C.O. had a prior conviction for dishonesty. Young had the burden to prove his claims warranted a hearing and must state an evidentiary basis to support them. See *Sola-Morales*, 300 Kan. at 881. Because Young did not provide any evidentiary support for this claim, it is conclusory and lacks merit.

5. *Trial counsel would not let Young see any evidence before trial.*

Young's fifth claim was not raised in his brief and is waived. See *White*, 308 Kan. at 511.

6. *Mandi Stevenson handled one of Young's court dates and was not capable of doing so.*

Young's sixth claim—trial counsel's "trainee" attorney, who handled one of Young's court dates, was not capable of handling things and knew nothing of Young's case—was not raised in his brief and is waived. See *White*, 308 Kan. at 511.

13

7.     *Trial counsel did not call Damon Strickland to testify.*

For his seventh claim, Young argues Strickland could have corroborated Young's testimony. Young also argues Murphy could have corroborated his testimony that the sex between Young and C.O. was consensual. But the record does not contain any explanation why trial counsel did not call Strickland to testify. Trial counsel did attempt to call Murphy in lieu of having Young testify, but the district court barred him from doing so and our court affirmed this decision. Young argues these two witnesses would have corroborated his testimony that he told them both he had consensual sex with C.O. shortly after it happened. While trial counsel could not have called Murphy to testify in lieu of Young, the district court did not forbid trial counsel from calling Murphy as a witness after Young testified. Evidence that Young told others he had consensual sex with C.O. shortly after the incident could have contributed to a not guilty verdict. Without having trial counsel's explanation as to why he did not call these witnesses, the motion, files, and records do not conclusively show that Young is not entitled to relief. Young is entitled to an evidentiary hearing on this claim.

8.     *At voir dire, a potential juror said she could not judge Young fairly because of a prior suspicious oil purchase.*

Young's eighth claim—trial counsel was ineffective for ignoring during voir dire one juror's statement she could not judge Young fairly "'because of a suspicious oil purchase a few years ago'"—was not raised in his brief and is waived. See *White*, 308 Kan. at 511.

9. *Trial counsel did not expose that Murphy's statement and what he asked Young were false.*

Young alleges his trial counsel was ineffective because he did not expose that Murphy was lying when Murphy only mentioned A.W. but his statement says he only mentioned C.O. It is not clear from Young's motion what particular statement he is alluding to, but we suspect Young likely means Murphy's interview with Young, which was raised at the *Jackson v. Denno* hearing before the district court. While it is true that Young's trial counsel did not cross-examine Murphy at trial, it is also true that Murphy did not testify about his interview with Young or about anything Young said to Murphy regarding A.W. and C.O. Because Murphy did not testify about Young's statements to him about A.W. or C.O., there was nothing for trial counsel to "expose" on cross-examination. To the extent this claim relates to trial counsel not calling Murphy as a defense witness after Young testified, we have already concluded that Young is entitled to an evidentiary hearing on that issue. But Young's claim that trial counsel's cross-examination of Murphy was ineffective lacks merit because trial counsel could not cross-examine Murphy about statements to which he did not testify on direct examination.

10. *Trial counsel did not show that C.O. had the opportunity to tear her shorts herself.*

This claim was not raised in Young's brief and is waived. See *White*, 308 Kan. at 511.

11. *Trial counsel did not object to the prosecutor leading C.O. "a good majority of the time."*

Young asserts the prosecutor led C.O. through most of her direct examination and claims his trial counsel never objected. However, Young does not explain where the

15

prosecutor led C.O. or what questions were leading questions. A review of the prosecutor's direct examination of C.O. reveals only a few leading questions that did not rise to "a good majority of the time" and were not substantive. The prosecutor primarily asked open-ended questions and allowed C.O. to tell her story. Young does not pinpoint where the leading questions occurred in the record, see Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35), and a review of the record does not support Young's claim. We conclude the record fails to conclusively establish Young's entitlement to an evidentiary hearing on this point.

12. *C.O. told Peck she was drinking and also testified at the preliminary hearing that she was drinking, but trial counsel did not expose that.*

Young next claims his trial counsel was ineffective for not raising the fact that C.O. previously said she had been drinking that day. The record contradicts Young's assertion. Trial counsel asked Peck if she took a blood or urine sample for toxicological purposes, and Peck replied it was unnecessary because C.O. was not suffering any memory loss. Trial counsel also directly asked C.O. on cross-examination if she had been drinking. When C.O. testified she had not been drinking that day, trial counsel used her contrary preliminary hearing testimony to impeach her. The record conclusively establishes trial counsel's performance was not deficient here because he did what Young alleges he did not—he introduced the fact that C.O. had previously stated she was drinking on the day of the incident. This claim lacks merit.

13. *A.W. and C.O. were inconsistent in their testimony.*

Young argues trial counsel did not point out the inconsistencies in A.W.'s and C.O.'s testimony. The record shows this claim is false. Trial counsel impeached C.O. with her preliminary hearing testimony about her drinking on the day of the incident. He also highlighted the conflicting stories from both women, and his closing argument was

16

centered around showing the conflicting testimony of A.W. and C.O. The record conclusively shows trial counsel pointed out the inconsistencies in A.W.'s and C.O.'s testimony. This claim lacks merit.

14. *Trial counsel did not call an expert witness to testify how C.O.'s injuries could have been consensual.*

Young argues his trial counsel was ineffective for not calling an expert witness to testify how C.O.'s injuries could have come from consensual sex. Without trial counsel's testimony, the record is empty of any explanation. If an expert witness could have testified that C.O.'s injuries could have come from consensual sex, the result may have been a verdict that Young was not guilty of rape. Because the record fails to conclusively show that Young is not entitled to relief on this claim, an evidentiary hearing is required.

15. *Trial counsel did not point out there was no semen on the shorts C.O. was wearing at the time of the incident and only objected once at trial.*

Young's 15th claim raises two issues. First, Young claims his trial counsel was ineffective for not pointing out that C.O.'s shorts did not have semen on them. But Young did not deny having sex with C.O. Young testified he did have sex with C.O. but that the sex was consensual. The lack of semen on C.O.'s shorts was irrelevant to Young's defense. In fact, it might have weakened his consent argument.

Second, Young claims his trial counsel only objected once when there were several instances of misconduct by the State. Like his earlier similar claim about trial counsel's supposed lack of objections, Young does not cite to any points in the record when this alleged misconduct occurred, what the misconduct was, or how trial counsel was ineffective for not objecting more. See Supreme Court Rule 6.02(a)(5) (2021 Kan. S.

17

Ct. R. 35). Such a conclusory allegation cannot satisfy Young's burden to show an evidentiary basis for his claim. This claim lacks merit.

16.     *Trial counsel did not admit evidence to show C.O. had a romantic interest in Young.*

Young next claims his trial counsel was ineffective for not admitting pictures and Facebook conversations showing that C.O. was romantically interested in Young. Young also alleges his mother and C.O.'s stepmother had a Facebook conversation about C.O.'s romantic interest in Young. Presumably, Young is arguing this evidence would support his claim the sex was consensual. An explanation from trial counsel as to why such evidence was not introduced does not exist in the record. The pictures and conversation could have gone toward Young's consent argument, although an earlier or even active romantic interest does not necessarily mean sex at a particular time was consensual. Because the record does not conclusively establish that Young cannot prevail on this claim, an evidentiary hearing is required.

17.     *Phone records and texts should have been court ordered.*

Young complains that A.W.'s and C.O.'s phone records and texts were not court ordered and would have shown they were on drugs on the day of the incident. An allegation that the district court should have ordered the production of phone records and texts is not an allegation of ineffective assistance of counsel, and Young does not allege in his motion that his trial counsel should have sought to subpoena their phone records. Given that Young's 17th claim fails to make an ineffective assistance of counsel claim, it lacks merit.

18. *Liquor store surveillance would have shown C.O. and A.W. paid for beer.*

For his 18th point, Young states a liquor store surveillance video would have shown C.O. and A.W. paid for beer. But Young does not explain how this shows his trial counsel was ineffective. Young does not tell us which liquor store had this surveillance video, nor does he explain how a surveillance video of them purchasing beer would have made a difference in his case. This conclusory allegation lacks merit.

19. *Neither C.O. nor Young had any cuts, bruises, or scratches.*

Young claims neither he nor C.O. had any cuts, bruises, or scratches, but he fails to explain how this alleged fact makes his trial counsel ineffective. Such a conclusory allegation lacks merit on its face. But the record also demonstrates it is false. Peck testified about several lacerations C.O. had around her vagina, including one that was considered quite large.

20. *It was not possible to for Young to penetrate C.O. when he was straddling her.*

Young's 20th claim was not raised in his brief and is waived. See *White*, 308 Kan. at 511.

21. *Trial counsel originally told Young he hired an investigator but, at trial, told Young there was no investigation.*

This claim is essentially the same as his second claim. Because the record is devoid of any explanation of what investigation, if any, was conducted by Young's trial counsel or an explanation that the investigation conducted was reasonable, an evidentiary hearing is required to explore these facts.

22.    *Trial counsel left Young's ex-father-in-law's best friend on the jury.*

Young's final claim was not raised in his brief and is waived. See *White*, 308 Kan. at 511.

In summary, Young did not raise claims numbered 5, 6, 8, 10, 20, and 22 on appeal, resulting in their waiver. Either Young did not carry his burden to show his claims warranted a hearing or the motion, files, and records conclusively establish a hearing is not necessary on claims numbered 1, 4, 9, 11, 12, 13, 15, 17, 18, and 19. However, the record does not conclusively establish a hearing is not warranted on Young's following claims:

(2)    Trial counsel did not investigate;

(3)    Trial counsel did not ask Peck if blunt force trauma could occur from consensual sex;

(7)    Trial counsel failed to call Strickland or Murphy to corroborate his story;

(14)    Trial counsel did not call an expert witness to testify that the blunt force trauma injuries could be from consensual sex;

(16)    Trial counsel failed to introduce the pictures and Facebook conversations showing C.O.'s romantic interest in Young; and

(21)    Trial counsel told Young he had an investigator but later said there was no investigation.

We therefore remand these six claims for the district court to conduct an evidentiary hearing.

We stress that our remand of these six claims to the district court does not mean they have merit. An evidentiary hearing can establish the validity of Young's claims, or the hearing may show his trial counsel was not ineffective. An evidentiary hearing on a K.S.A. 60-1507 motion is the rule, not the exception. See K.S.A. 2020 Supp. 60-1507(b). Substantial issues of fact remain that must be resolved before it can be determined if Young received effective assistance of trial counsel. See *Bellamy*, 285 Kan. at 357.

Affirmed in part, reversed in part, and remanded with directions for the district court to hold an evidentiary hearing on Young's six remaining claims.